Anthony HANCOCK, et al., Plaintiffs,

v.

John THALACKER, et al., Defendants.

No. C 95–0252–MWB.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

July 9, 1996.

**1453**

Patrick E. Ingram of Mears Law Office, Iowa City, Iowa, for Plaintiffs.

Forrest A. Guddall, Asst. Atty. Gen., Iowa Attorney General's Office, Des Moines, Iowa, for Defendants.

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFFS' RE-NEWED MOTION FOR CLASS CER-TIFICATION AND MOTION FOR SUMMARY JUDGMENT**

BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ................................................. 1454
 A. Procedural Background ...................................... 1454
 1. The original complaint, original parties, and original attempt at class certification ........................................... 1454
 2. Interim intervenors ..................................... 1456
 3. Renewed motion for class certification and motion for summary judgment ............................................... 1456
 4. Inadequacies and shortcuts .............................. 1458
 5. Establishment of the proper procedural footing for disposition of the pending motions ........................................ 1459
 a. Intervention of new plaintiffs and requirements for assertion of their claims ........................................ 1459
 b. Identification of claims .............................. 1461
 B. Factual Background ........................................ 1462
 1. Undisputed facts ....................................... 1462
 2. Disputed facts ......................................... 1464
II. LEGAL ANALYSIS .............................................. 1465
 A. Renewed Motion For Class Certification ..................... 1465
 B. Plaintiffs' Motion For Summary Judgment ................... 1468
 1. Standards for summary judgment ......................... 1468
 2. Standards for amendment ............................... 1470
 3. Claims against defendants Thalacker and Salviati ......... 1471
 4. "Due process" claims .................................. 1472

5. "Free speech" claims .......................................... 1474
6. "Right of petition" claims..................................... 1479
 a. "Retaliation" for exercise of the right of petition ................... 1479
 b. "Chilling" of the right of petition............................... 1480
 i. A prisoner's right of petition............................. 1482
 ii. Decisions addressing discipline for "false" statements in griev-
 ances ............................................... 1482
 iii. Is there an unconstitutional "chill" in this case? ............... 1486
 iv. Genuine issues of material fact............................ 1490
 C. Qualified Immunity ............................................ 1493
 D. Declaratory And Injunctive Relief ................................ 1494
III. CONCLUSION ................................................... 1494

---

Does disciplining prisoners for "false statements" made in grievances to prison officials improperly impinge upon the prisoners' due process rights, constitute unconstitutional retaliation for the exercise of rights of free speech or access to the courts, or chill the prisoners' right to petition the government for redress of grievances? Although the plaintiff prisoners at the Iowa Men's Reformatory have not made clear which of these rights they assert has been violated, they have nonetheless moved for summary judgment on the ground that punishment of prisoners for "false statements" in grievances is unconstitutional. The prisoners further contend that their constitutional right not to be punished for "false statements" made in grievances was clearly established by a decision of the Eighth Circuit Court of Appeals, removing any shield of qualified immunity defendants might raise to liability in this case. Defendant prison officials counter that they could properly punish statements violative of prison rules, even if those statements were contained in grievances, because there is no constitutional protection for false statements. Otherwise, defendants contend, a prisoner could "camouflage" conduct in violation of prison rules simply by couching it in the context of a grievance. They further assert qualified immunity on the basis of decisions of the Eighth Circuit Court of Appeals apparently limiting the holding of the case upon which plaintiffs principally rely.

As a separate matter, the plaintiffs make a renewed attempt to certify a class of all persons who have been, are now, or ever will be prisoners at the Iowa Men's Reformatory. The court previously denied certification of

such a class, primarily on the ground that plaintiffs produced no reliable standards or estimates for the numerosity of the purported class, but plaintiffs assert that additional submissions now demonstrate the existence of a viable class action. Defendants counter that the renewed class action still fails several requirements for class certification, most notably numerosity and common legal and factual issues.

These pending motions call upon the court to determine what claims *are*, as well as what claims *may*, be asserted, by whom, on behalf of whom, against whom, and for what relief. The court must also determine whether final disposition of any claims is possible on the record presently before the court.

## I. INTRODUCTION

### A. Procedural Background

The procedural background of this litigation is unusually complex. Although a complex procedural posture for a ruling is not that unusual, the complexity here arises not just from what procedural steps have occurred, but from what procedural steps have not been taken, in attempting to certify a class of plaintiffs and to obtain favorable summary disposition on behalf of that class.

### 1. The original complaint, original parties, and original attempt at class certification

The original plaintiff in this matter, Anthony Eugene Hancock, filed an application for leave to proceed *in forma pauperis* on June 16, 1995.[1] Co-plaintiff Quentin McGowan

---

1. Mr. Hancock's original complaint was filed by counsel, who has represented Mr. Hancock and

all of the other purported plaintiffs throughout

filed no application for leave to proceed *in forma pauperis,* nor did he pay any filing fee. Consequently, Mr. McGowan was dismissed from the lawsuit on initial review on July 28, 1995. However, Mr. Hancock was granted leave to file his complaint, styled as a "Class Action Complaint," on July 28, 1995. The defendants named in that complaint were John Thalacker, the Warden of the Iowa Men's Reformatory (IMR),[2] Larry Brimeyer, the grievance officer and administrative law judge at the IMR, and Thomas Luensman, a corrections supervisor at the IMR.[3] The original "Class Action Complaint," filed by Mr. Hancock under 42 U.S.C. § 1983, asserts that Mr. Hancock and other members of a purported class of inmates have been denied their First Amendment rights to petition the government for redress of grievances as the result of disciplinary actions against them by defendants for statements made in grievances, which, *inter alia,* complained about the conduct of certain IMR officials.[4] The complaint seeks compensatory and punitive damages, as well as injunctive and declarato-ry relief. The defendants answered the original complaint on September 5, 1995.

On August 16, 1995, shortly after leave to file the complaint in this lawsuit was granted, Mr. Hancock moved for certification of a class identified as "all persons who have been, are now, or in the future will be confined in the Iowa Men's Reformatory disciplinary lockup because of comments made in grievances."[5] Mr. Hancock further suggested that the members of the class are "all persons who have been, are now or will be prisoners at the Iowa Men's Reformatory regardless of whether they [were] disciplined as Mr. Hancock was." On September 13, 1995, however, this court denied the motion for class certification, finding that plaintiff Hancock had produced no reliable standards or estimates for the numerosity of his asserted class, and that he had failed to identify even the approximate size of the class or to demonstrate the impracticability of joinder. Instead, the court found Mr. Hancock had

the prosecution of this lawsuit without any appointment by the court.

2. Defendant Thalacker was also dismissed from this lawsuit upon the court's initial review, because the court found that only *respondeat superior* liability had been asserted against him, not his participation in any of the alleged acts, knowledge of such acts, or acquiescence in their occurrence.

3. The original complaint does not indicate whether the defendants are sued in their individual or official capacities, or both.

4. The original "Class Action Complaint," although filed by counsel and not by prisoners *pro se,* is no model of clarity. For example, the "Introductory Statement" identifies the claims as "violation of the Plaintiffs' due process and free speech rights," Complaint, ¶ 2, but the "Class Action" division of the complaint asserts that the plaintiffs "are and will be subjected to violations of the rights of petition and due process." Complaint, ¶ 10. The plot thickens further with the "Causes of Action" division of the Complaint, which states, "Defendants' policy and practice of disciplining inmates for the statements made in grievances *violates* prisoners' first amendment right to petition the government for redress of grievances," Complaint, ¶ 30, while in subdivision (b) of the prayer of the Complaint, declaratory judgment is sought "declaring the defendants' practice and policy of disciplining inmates for *the filing* of grievances is in violation of the First and Fourteenth Amendments." Complaint, prayer, subdivision (b) (emphasis added). Still further confusion is engendered by subdivision (c) of the prayer, in which preliminary and permanent injunctive relief are sought "requiring that the defendants cease the practice and policy of disciplining inmates *for the statements made in* grievances." Complaint, prayer, subdivision (d) (emphasis added). As the subsequent legal analysis will demonstrate, whether the action proceeds as one by individual plaintiffs or as a class action, precisely what claim is or claims are actually asserted may be determinative of the viability of the present lawsuit, as well as whether summary judgment is appropriate. At present, the candidate claims are the following: 1) "due process" claims, pursuant to the Fourteenth Amendment; 2) First Amendment "free speech" claims as the result of discipline for *statements in* grievances; 3) First Amendment "right of petition" or "access to the courts" claims based on disciplinary actions for *filing* grievances (retaliation); 4) First Amendment "right of petition" or "access to the courts" claims based on discipline for *statements in* grievances (chilling or burdening rights of access to the courts or to petition the government).

5. At least, that is how the class was characterized in the motion for class certification. The class as characterized in the original complaint was much broader, including "all persons who have been, are now, or in the future will be confined in the Iowa Men's Reformatory." Complaint, ¶ 10.

relied on conclusory statements that anyone who has ever been or ever will be an inmate at the IMR is a class member, which the court concluded will not do. Furthermore, the court found, Mr. Hancock had been able to identify only two other potential class members and only one further potential class member had volunteered his identity. The court concluded that all three of these potential class members could practicably intervene in the present litigation. Thus, the court concluded that it was likely that trying the individual suits would not be inconvenient, because the court could examine the factual basis of each asserted class member's complaint.

### 2. Interim intervenors

In the interim, on August 29, 1995, Benjamin J. Avila, another prisoner at the IMR, moved to intervene in this action as a plaintiff by filing an application to proceed *in forma pauperis,* as well as a "Statement of Facts" and "Supplement," which the court construed together as Mr. Avila's complaint. Mr. Avila's motion to intervene was granted, and Mr. Avila's complaint, as construed by the court, was ordered filed on October 10, 1995. Mr. Hancock's counsel notified the court on October 17, 1995, that he consented to representation of Mr. Avila as well as any other inmates who joined the action. Defendants answered Mr. Avila's complaint in intervention on November 16, 1995.

On December 4, 1995, original co-plaintiff Quentin McGowan filed a motion to accept late filing of an *in forma pauperis* statement, which Mr. McGowan asserted was attached to his motion. However, because no such *in forma pauperis* application was attached to the motion, the court denied the motion on

January 29, 1996. Thus, prior to the renewed motion for class certification, the only plaintiffs in this action were Mr. Hancock and Mr. Avila.

### 3. Renewed motion for class certification and motion for summary judgment

On March 11, 1996, in a motion mailed just prior to a deadline for amendment of the complaint in this matter, plaintiff Hancock filed a renewed motion for class certification. The renewed motion for class certification was accompanied by a second "Class Action Complaint" (hereinafter, "Second Class Action Complaint"). No motion to amend the original complaint has ever been filed, however. The Second Class Action Complaint names as plaintiffs Mr. Hancock, Quentin McGowan, Toby Welsh,[6] and Tim Luncsford. Thus, at this point plaintiff Benjamin Avila entirely disappeared from this litigation without explanation. Furthermore, one plaintiff twice denied leave to proceed *in forma pauperis,* Mr. McGowan, has reappeared, and two entirely new plaintiffs, Mr. Welsh and Mr. Luncsford, have entered the picture. In addition, the Second Class Action Complaint also identifies a new defendant, Lt. Salviati, but does not drop any of the three defendants named in the original complaint.[7]

Unfortunately, the Second Class Action Complaint does not clarify the confusion as to the nature of the claims asserted by the class action plaintiffs identified *supra* in note 4. *Compare* Second Class Action Complaint, ¶¶ 1 (alleging violation of the plaintiffs' "First Amendment right to free speech and to petition the government"), 2 (alleging violation of the plaintiffs' "rights under the First and Fourteenth Amendments of the United States Constitution," and requesting injunc-

---

6. Although identified in the Second Class Action Complaint as "Toby Welch," in his declaration *in forma pauperis,* this plaintiff indicates that his name is in fact "Toby Welsh."

7. Unlike the original complaint, the Second Class Action Complaint states whether the defendants are sued in their individual or official capacities, or both. Second Class Action Complaint, ¶¶ 9–12. Warden Thalacker and Thomas Luensman are being sued only in their individual capacities. *Id.* at ¶¶ 9 & 12. Defendants Brimeyer and Salviati, however, are sued in both their individual and official capacities. *Id.* at ¶¶ 10 & 11. The

Second Class Action Complaint, in addition to adding Lt. Salviati as a new defendant, asserts new claims against defendant Thalacker, even though he was dismissed from the original lawsuit on initial review. The court has reviewed the Second Class Action Complaint and finds that "new" plaintiffs McGowan and Welsh have made factual allegations referring to defendant Thalacker. The court will determine below whether more than *respondeat superior* liability of defendant Thalacker has been asserted by these two "new" plaintiffs.

tive relief "to prevent ongoing violation of the Plaintiff's due process and free speech rights"), 14 (alleging members of a class "have been, are and will be subjected to violations of the rights of petition and due process"), 50 (identifying the cause of action of the class as "violat[ions of] prisoners' first amendment right to petition the government for redress of grievances"), and prayer subdivisions (b) (seeking declaratory relief for "violation of the First and Fourteenth Amendments"), and (c) (seeking injunctive relief prohibiting the disciplining of inmates "for statements made in grievances"). Nonetheless, the court understands the gravamen of the class action complaint is still alleged to be violation of the class members' First Amendment right to petition the government for redress of grievances. Furthermore, the court notes a discrepancy between the class identified in the Second Class Action Complaint and the renewed motion for class certification. The Second Class Action Complaint identifies the class as "all persons who have been, are now, or in the future will be confined in the Iowa Men's Reformatory." Second Class Action Complaint, ¶ 14. However, the renewed motion for class certification states that certification is sought for a much narrower class, defined as "all persons who have been, are now, or in the future will be confined in the Iowa Men's Reformatory *disciplinary lockup because of comments made in grievances.*" Renewal of Motion for Class Certification, ¶ 1 (emphasis added). There is also a discrepancy as to the identity of the intended class representatives. The prayer of the motion asks that the court "nam[e] Mr. Hancock, Mr. Welch [sic] and McGowan [sic] as a [sic] representative parties." However, four plaintiffs, including Mr. Luncsford, are identified in the Second Class Action Complaint, and the "Parties" division of the Second Class Action Complaint identifies each of these plaintiffs as a "representative plaintiff." Second Class Action Complaint, ¶¶ 5–8. *At a minimum, whatever other disposition is made of the present motions, plaintiffs will be required to amend the complaint to state consistently the cause or causes of action they intend to pursue or that this court finds is or are viable, as well as to identify properly the class representatives and the defining*

*characteristics of the class, if a class is indeed certified.* The Second Class Action Complaint seeks declaratory and injunctive relief, as well as actual and exemplary damages for the alleged violation of the plaintiffs' constitutional rights.

Attached to the renewed motion for class certification, in addition to the Second Class Action Complaint, are the affidavits of Arthur Scott Fetters and Daveed Bachar Ha-Breet, a/k/a Arthur Tripplett. These affiants assert that they have in the past desired to file grievances regarding things done to them by members of the IMR staff, but have not done so because they feared harassment, retaliation, or repercussions, and further asserting, in the case of Mr. HaBreet, that he had seen other inmates so harassed for filing grievances. Also attached to the renewed motion for class certification is a declaration *in forma pauperis* by Mr. McGowan. A brief in support of the motion for class certification was also filed on March 11, 1996. Toby Welsh subsequently filed a declaration *in forma pauperis* on March 29, 1996. However, the court finds no application to proceed *in forma pauperis* from new class-action plaintiff Luncsford. Also subsequently filed in support of the renewed motion for class certification is an affidavit, filed March 26, 1996, by Douglas Thompson, a legal assistant at the IMR, who affirms that he is personally aware of more than twenty-five inmates who "have either received or were threatened with disciplinary actions if they filed a grievance," and that he has been told several times by inmates that they feared retaliation or harassment by correctional staff if they filed grievances. On April 12, 1996, defendants filed an answer to the Second Class Action Complaint, although leave to file such a complaint has never been granted, as well as a resistance to the renewed motion for class certification.

The other motion pending before the court is the March 11, 1996, motion for summary judgment by all of the plaintiffs named in the Second Class Action Complaint. The motion requests that the court enter judgment, which, according to the complaint and supporting brief, should include compensatory and punitive damages, as well as declaratory

and injunctive relief, for all plaintiffs in the action on the basis of the undisputed facts identified in a companion filing. More specifically, the supporting brief asserts that plaintiffs are entitled to summary judgment on their "First Amendment retaliation claim" for retaliating against inmates for exercising their right to petition the government for redress of grievances through the prison grievance procedures. Plaintiffs also assert that defendants are not entitled to qualified immunity, because the decision in *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir.1989), which is "nearly on all points with this case," demonstrates that the rights violated by defendants were clearly established.

Defendants resisted the motion for summary judgment on April 12, 1996, principally on the ground that plaintiffs cannot state a retaliation claim when the discipline subsequent to the filing of their grievances was for a violation of prison rules, in this case, the rules prohibiting "false statements" and "defamation," even if such rules were violated by statements in the grievances filed by the defendants. They also contend that decisions subsequent to *Sprouse* limit the interpretation of that case asserted by plaintiffs, and therefore no clearly established rights have been violated. Hence, defendants assert their qualified immunity to liability for plaintiffs' claimed violations of their rights. No reply briefs have been filed in support of either of plaintiffs' motions, nor has any party sought a hearing on either the motion for summary judgment or the motion for class certification.

### 4. Inadequacies and shortcuts

The court is disturbed by a number of things noted in this recitation of the procedural posture of the case. First, although Mr. Hancock and the other purported plaintiffs are represented by counsel, there is no "short and plain statement" as required by *Fed.R.Civ.P.* 8(a), nor even a prolix and ornate one, of precisely what claims are at issue in this litigation. Instead, there is a rather sloppy "shotgun" assertion of First and Fourteenth Amendment violations, with various inconsistent articulations of the claim or claims asserted under these amendments.

The court is left in the position of attempting to determine whether plaintiffs are entitled to class certification, summary judgment, or both on whatever claims the court can construe plaintiffs' complaint to assert.

However, at least as disturbing to the court is a problem antecedent to the question of what claims plaintiffs are attempting to assert. That problem is the apparent short-circuiting of necessary procedural steps to bring whatever claims are asserted before the court, let alone before the court for summary disposition. Only the *in forma pauperis* applications and the claims of two plaintiffs, Mr. Hancock and Mr. Avila, the latter of whom has apparently disappeared from this litigation without explanation, have been subjected to initial review by the court pursuant to 28 U.S.C. § 1915(d). Although two other applications to proceed *in forma pauperis* are pending, those of Mr. McGowan and Mr. Welsh, there is as yet no such application from the fourth purported representative of the class, Mr. Luncsford, and no claims of any of these three inmates have been subjected to initial review. The court concludes that it is improper to certify these three inmates as class representatives, and to certify a class, when there has been no assessment of whether these purported representatives even have non-frivolous claims, let alone whether such claims are representative of the purported class. Furthermore, there has been no motion by these three "new" plaintiffs to intervene in the present litigation, pursuant to *Fed.R.Civ.P.* 24, and no motion to amend the original complaint in this matter, pursuant to *Fed.R.Civ.P.* 15, to incorporate all of the additions, including new plaintiffs and their claims and a new defendant, found in the Second Class Action Complaint, prior to the renewed motion for class certification.

The motion for summary judgment therefore apparently assumes that the court will grant summary relief, sweeping past procedural failings as follows: granting all named plaintiffs leave to proceed *in forma pauperis*, whether they have filed applications or not, which includes finding the claims of all named plaintiffs, whatever those claims might be, non-frivolous pursuant to 28 U.S.C.

§ 1915(d); finding that the "new" plaintiffs should be granted leave to intervene in the present litigation pursuant to *Fed.R.Civ.P.* 24(b), although no leave to intervene has been sought; finding that the Second Class Action Complaint should be allowed as an amendment of the existing complaint, pursuant to *Fed.R.Civ.P.* 15, although no motion for leave to amend has been filed; approving the Second Class Action Complaint for certification as a class action pursuant to *Fed. R.Civ.P.* 23; overlooking the fact that a new defendant has never been served with or consented to service of the new complaint; construing the mishmash of claims into specific and coherent claims upon which relief can be granted; finding that there is no genuine issue of material fact on any of the claims, whatever the court construes them to be; finding that plaintiffs are entitled to judgment as a matter of law on some or all of the as yet ill-defined claims; and further finding that the rights poorly identified in the complaint were so clearly established· that defendants are stripped of qualified immunity.

### 5. *Establishment of the proper procedural footing for disposition of the pending motions*

Were it not for the interests of judicial economy and economy of the parties, and the apparent acquiescence in plaintiffs' procedural shortcutting by the defendants, who have pointed out none of these procedural failings and have instead resisted the motions for class certification and for summary judgment on their merits, the court simply would not find this matter ripe for consideration of either class certification or summary disposition. The court finds that the "new" plaintiffs, at least, have invited the court to bypass

the relatively permissive review of their claims for non-frivolousness pursuant to 28 U.S.C. § 1915(d), and instead have asked the court to measure their claims by the more rigorous standards of *Fed.R.Civ.P.* 56. Nonetheless, the court finds another course to be the proper one.

### a. *Intervention of new plaintiffs and requirements for assertion of their claims*

First, the court will not simply bypass the steps necessary to make the "new" plaintiffs named in the Second Class Action Complaint or their claims part of this litigation. The court construes the proffer of the Second Class Action Complaint as an application to intervene pursuant to *Fed.R.Civ.P.* 24 by plaintiffs McGowan, Welsh, and Luncsford. Furthermore, it is apparent from the complaint that permissive intervention pursuant to *Fed.R.Civ.P.* 24(b)(2), rather than intervention as of right pursuant to *Fed.R.Civ.P.* 24(a), is what the "new" plaintiffs seek. The allegations of the complaint and the arguments based on those allegations are that the claims of the "new" plaintiffs and those of Mr. Hancock (and Mr. Avila) involve common questions of law or fact. *See, e.g., Fed. R.Civ.P.* 24(b)(2) (permissive intervention is allowed "when an applicant's claim or defense and the main action have a question of law or fact in common"); *Winbush v. State of Iowa by Glenwood State Hosp.,* 66 F.3d 1471, 1478–79 (8th Cir.1995) (stating grounds for permissive intervention); *United States v. Union Elec. Co.,* 64 F.3d 1152, 1170 & n. 9 (8th Cir.1995) (same).

■ It is also apparent that the "new" plaintiffs have met all of the requirements for permissive intervention in this case.[8]

---

8. *Fed.R.Civ.P.* 24(b) states, in pertinent part, that permissive intervention may be allowed

> (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

The grant or denial of permissive intervention is in the discretion of the trial court. *Winbush,* 66 F.3d at 1478 (citing *NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973)); *Union Electric Co.,* 64 F.3d at 1170

n. 9; *Arrow v. Gambler's Supply, Inc.,* 55 F.3d 407, 410 (8th Cir.1995) (citing for this standard of review *McLean v. Arkansas,* 663 F.2d 47, 48 (8th Cir.1981)); *Sierra Club v. Robertson,* 960 F.2d 83, 85 (8th Cir.1992) (citing *Walters v. City of Atlanta,* 803 F.2d 1135, 1151 n. 16 (11th Cir.1986), for proposition that review of denial of a motion to intervene of right was "for error," but denial of motion for permissive intervention was for abuse of discretion).

Permissive intervention must be supported by independent jurisdictional grounds. *Union Elec-*

First, the Second Class Action Complaint identifies the statutory basis for assertion of the claims as 42 U.S.C. § 1983. The plaintiffs have therefore shown an independent ground for jurisdiction, specifically, a federal question. *Union Electric*, 64 F.3d at 1170 n. 9 (intervenor must show independent ground for jurisdiction). As to timeliness and lack of delay or prejudice, *Winbush*, 66 F.3d at 1478 (timeliness requirement), the "new" plaintiffs' motion to intervene, as the proffered Second Class Action Complaint is construed to be, was filed prior to the deadline for amendments to add new parties or otherwise amend the complaint. Furthermore, the court finds that intervention by these plaintiffs will not delay the proceedings or prejudice any existing party. *Id.* (court must assess delay or prejudice caused by intervention). Trial in this matter is not set until the two-week trailing-calendar period beginning November 4, 1996. Furthermore, with some thought to policy concerns, there may be significant gains in judicial economy and economies to the parties, not least the state, in litigating these matters together instead of piecemeal. *Union Elec. Co.*, 64 F.3d at 1165 (policy considerations are relevant to permissive intervention, although they are irrelevant to intervention as of right). Finally, the allegations of the new plaintiffs, while alleging only similar facts involving incidents separate from that identified in Mr. Hancock's complaint, give rise to an identical question of law, which is whether those facts constitute a violation of an inmate's First Amendment right to petition the government for redress of grievances. *Fed.R.Civ.P.* 24(b)(2) (permissive intervention requires a common question of law or fact). Thus, the "new" plaintiffs will be allowed to intervene in this action to the extent they otherwise present viable claims.

Next, because plaintiffs McGowan and Welsh have filed applications to proceed *in forma pauperis*, the court will undertake an initial review of their claims pursuant to 28 U.S.C. § 1915. However, because Mr. Luncsford has filed neither an application to proceed *in forma pauperis* nor paid a filing fee, plaintiff Luncsford is dismissed as a plaintiff to this action without prejudice. 28 U.S.C. §§ 1914(a) and 1915(d). Thus, considering only the claims of Mr. McGowan and Mr. Welsh, although the court has already found Mr. Hancock's similar allegations sufficient to survive initial review by the court, 28 U.S.C. § 1915(d), the court believes that this matter has progressed sufficiently for the court to make a less generous consideration of whether the "new" plaintiffs' claims are frivolous within the meaning of 28 U.S.C. § 1915(d). On initial review of Mr. Hancock's claims, the court stated that it was not convinced that his claims were not frivolous within the meaning of the statute, but that the court believed the matter was better addressed after receipt of an answer and any dispositive motion deemed appropriate. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Money v.*

---

*tric*, 64 F.3d at 1170 n. 9; *St. Paul Fire & Marine Ins. v. Helena Marine Serv.*, 884 F.2d 391, 393 (8th Cir.1989), *cert. denied*, 494 U.S. 1004, 110 S.Ct. 1298, 108 L.Ed.2d 475 (1990). Thus, a court may grant intervention under *Fed.R.Civ.P.* 24(b) where (1) the movant shows independent ground for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense and the main action have a question of law or fact in common. *Winbush*, 66 F.3d at 1478 (timeliness requirement and common question of law or fact); *Union Electric*, 64 F.3d at 1170 n. 9 (these three requirements); *Greene v. United States*, 996 F.2d 973, 978 (9th Cir.1993) (same); *Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir.1989) (same), *aff'd*, 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990).

In exercising its discretion as to whether or not to grant permissive intervention, *Fed.R.Civ.P.* 24(b) specifically provides that "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Fed.R.Civ.P.* 24(b); *Winbush*, 66 F.3d at 1478–79; *Arrow*, 55 F.3d at 410. This "lack of delay or prejudice" requirement appears to be closely tied to the "timeliness" requirement, because "timeliness" is to be considered in the "totality of the circumstances," *Winbush*, 66 F.3d at 1479 (citing *NAACP*, 413 U.S. at 366, 93 S.Ct. at 2603), with particular consideration given to "the status of the proceedings at the time of the motion, prejudice others may suffer as a result of the delay, and the reason for the delay." *Id.* (citing *Arkansas Elec. Energy Consumers v. Middle South Energy, Inc.*, 772 F.2d 401, 403 (8th Cir.1985)). Finally, although policy considerations have no place in determination of a motion to intervene as of right, they may be relevant to determination of a motion for permissive intervention. *Union Electric*, 64 F.3d at 1165; *accord In re Sierra Club*, 945 F.2d 776, 779 (4th Cir.1991).

*Moore,* 877 F.2d 9 (8th Cir.1989). However, the "new" plaintiffs' claims are presented with a summary judgment record and defendants' answer to their claims, even though no answer was as yet required. Also, in order to allow amendment of the original complaint to assert the new allegations pursuant to *Fed.R.Civ.P.* 15, the court will be required to determine, *inter alia,* that the amendment is not "futile." *See, e.g., Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987). Therefore, the court will assess, in the legal analysis section, whether any of the claims asserted by the "new" plaintiffs are so futile as to preclude their injection into this litigation, and consequently are "frivolous" within the meaning of 28 U.S.C. § 1915(d), such that they should be dismissed.

### b. Identification of claims

This brings the court back to the question of what claims are asserted by Mr. Hancock and the "new" plaintiffs on behalf of themselves and on behalf of the class they seek to represent. The court, viewing the Second Class Action Complaint more liberally than a document drafted by counsel probably deserves, construes the complaint as attempting to state four claims, or theories, of constitutional violations, on behalf of each of the named plaintiffs and on behalf of the asserted class: 1) "due process" claims, pursuant to the Fourteenth Amendment; 2) First Amendment "free speech" claims as the result of discipline for *statements in* grievances (one kind of retaliation claim); 3) First Amendment "right of petition" or "access to the courts" claims based on disciplinary actions for *filing* grievances (another kind of retaliation claim); and 4) First Amendment "right of petition" or "access to the courts" claims based on discipline for *statements in* grievances (chilling or burdening rights of access to the courts or to petition the government). The court will therefore consider whether these claims by the "new" plaintiffs are futile, and hence frivolous, and whether, if the claims can be asserted, the plaintiffs are entitled to summary judgment on them.

The court finds that it is powerless to dismiss any of Mr. Hancock's claims, even should the court find that they are "futile," because of the difference in the procedural footing of Mr. Hancock's claims. The court's power to reject any claims of the "new" plaintiffs found to be futile arises from the court's authority to undertake initial review and to grant or deny leave to amend the existing complaint to assert those new claims. However, Mr. Hancock's claims survived initial review, whatever the court's skepticism about their non-frivolousness at the time of initial review. Defendants have not filed pre-answer motions to dismiss Mr. Hancock's claims pursuant to *Fed.R.Civ.P.* 12(b)(6), nor cross-moved for summary judgment pursuant to *Fed.R.Civ.P.* 56 on Mr. Hancock's claims or those of any of the other plaintiffs. The court thinks it likely that, should the court determine that certain claims of the "new" plaintiffs are futile, the plaintiffs will either voluntarily withdraw the similar claims made by Mr. Hancock or the defendants will move for summary judgment on those claims.

There remains as a procedural hurdle only the question of Mr. Avila's continued participation in this lawsuit. Although Mr. Avila was granted leave to intervene in this lawsuit, he is not identified anywhere in the Second Class Action Complaint as a plaintiff. The record provides no information concerning any request for voluntary dismissal of his claims or concerning his interest in continuing to prosecute his claims. Therefore, the court will order Mr. Avila or his counsel to file a status report on Mr. Avila's intention to continue prosecution of his claims. Failure to file the required status report, or failure to do so in a timely manner will be deemed failure to prosecute this action and may be deemed willful disobedience of a court order, resulting in dismissal of Mr. Avila's claims for want of prosecution pursuant to *Fed. R.Civ.P.* 41(b). *See Aziz v. Wright,* 34 F.3d 587, 589 (8th Cir.1994) (finding dismissal proper under Rule 41(b) for willful disregard of court order and court's warning of consequences for failure to comply), *cert. denied,* —— U.S. ——, 115 S.Ct. 752, 130 L.Ed.2d 652 (1995); *Mullen v. Galati,* 843 F.2d 293, 294 (8th Cir.1988) (also quoting

*Givens* ); *Fletcher v. Southern Farm Bureau Life Ins. Co.,* 757 F.2d 953, 956 (8th Cir.1985) (dismissal under Rule 41(b) is warranted in cases of " 'willful disobedience of a court order or continued or persistent failure to prosecute a complaint,' " quoting *Givens v. A.H. Robins Co., Inc.,* 751 F.2d 261, 263 (8th Cir.1984)).

With these preliminary procedural hurdles removed, by the court's generous construction of various filings of the parties, the court may now turn to the factual background for this litigation and to disposition of the pending motions.[9]

### B. Factual Background

In light of the court's cure of procedural defects, this litigation is before the court on plaintiffs' motion for summary judgment. Therefore, the court will examine the factual background of this litigation in terms of what facts the record demonstrates are undisputed and what facts the parties assert are genuinely in dispute. However, because plaintiff Luncsford has been dismissed from this litigation, albeit without prejudice, for failure to file an application to proceed *in forma pauperis* or pay a filing fee, the court will make no findings of fact concerning Mr. Luncsford and no legal analysis of his claims.

### 1. Undisputed facts

Each of the three plaintiffs still before the court is an inmate at the IMR, and each encountered adverse consequences as the result of filing grievances or otherwise complaining to IMR officials about the conduct of IMR officials or corrections officers. Each of the plaintiffs claims to have suffered a violation of his constitutional rights when he ran afoul of prison rules against "false statements" and "defamation" on the basis of statements each made in a grievance or complaint to IMR officials. IMR rules define the offense of "False Statements" as follows:

An inmate commits an offense under this subsection when the inmate *knowingly* makes a false statement whether or not

under oath or affirmation, including but not limited to, dishonesty, deception, cheating, etc.

Class I Offenses, Rule 35, *Information Guide, Iowa State Men's Reformatory* (June 1, 1994, ed.), p. 16 (hereinafter, "IMR Rule 35") (emphasis added). In addition to the prohibition on "false statements" found in IMR Rule 35, another IMR rule prohibits "defamation," as follows:

An inmate commits an offense under this subsection when the inmate *knowingly* portrays, depicts, or expresses oral or verbal defamatory statements or accusations towards any person.

Class I Offenses, Rule 41, *Information Guide, Iowa State Men's Reformatory* (June 1, 1994, ed.), p. 16 (hereinafter, "IMR Rule 41") (emphasis added). The court will consider in turn the facts from which the claims of constitutional violations of each of these plaintiffs arise.

First, original plaintiff Anthony Hancock filed a grievance on April 12, 1995, in which he asserted that Officer Fairbanks, a corrections officer who is not otherwise involved in these proceedings, was a "racist" and a member of the "K.K.K." or some other white racist organization. As a result of the filing of that grievance, defendant Luensman told Mr. Hancock that if he filed a grievance with accusations against Officer Fairbanks or Officer Luensman, Luensman would put him "on report." Mr. Hancock filed a grievance on April 13, 1995, complaining about Officer Luensman's comments, and asking that Officer Luensman be ordered "to refrain from making such thre[a]ts so I could be p[ro]tected when [I] desire to file such grievance." Hancock's Grievance No. 20–0356–95, Plaintiffs' Exhibit 13. Officer Luensman filed a disciplinary report against Mr. Hancock charging him, *inter alia,* with making "false accusations" about Officer Fairbanks and himself and citing IMR Rules 35 and 41. The record does not reveal what, if any, consequences Mr. Hancock suffered as a result of the disciplinary report filed by Officer

---

9. The court does not overlook the fact that a new defendant, Lt. Salviati, has never been served with nor consented to service of the new complaint. Should the court conclude that the Sec-

ond Class Action Complaint should be filed, the court will order that Lt. Salviati be served with that complaint prior to any final disposition of the claims therein asserted against him.

Luensman. However, defendant Larry Brimeyer, acting as the IMR grievance officer, denied Mr. Hancock's April 13, 1995, grievance. In his grievance response, dated April 26, 1995, Mr. Brimeyer reported that Officer Luensman denied telling Mr. Hancock that he could not file grievances, but admitted advising Mr. Hancock that "[he] would be held accountable for any accusations that [he] made against staff in these grievances and wanted [him] to be aware of that and to be aware of the possibility of disciplinary action if [he] did not follow those instructions." Grievance/Warden Appeal Response, Plaintiffs' Exhibit 15. The conclusion of Mr. Brimeyer's response was as follows: "Based on the above findings, as well as the information you have provided, I am recommending your grievance be denied. I see nothing unreasonable about the instructions you were given." *Id.*

"New" plaintiff Quentin McGowan also filed a grievance the response to which he alleges violated his constitutional rights. On April 16, 1994, Mr. McGowan filed a grievance in which he stated that an Officer McArtor "threat[ened] me right in front of my cell. He said that if I called him cookie again when I didn't he was going to show me something and then he said he was going to whip my ass." McGowan's Grievance, No. 20-0450–94, Plaintiffs' Exhibit 5. Mr. McGowan requested in that grievance that Officer McArtor "give me a writ[t]en apology." *Id.* On April 22, 1994, Officer McArtor filed a disciplinary report against Mr. McGowan, stating that he had learned of Mr. McGowan's grievance from Lt. Salviati. In his disciplinary report, Officer McArtor charged Mr. McGowan with violation of IMR Rules 35 and 41 against false statements and defamation, stating that he had never threatened Mr. McGowan in any manner. On April 27, 1994, Mr. Brimeyer, this time acting as a member of the IMR disciplinary committee along with two other members, found Mr. McGowan guilty of violations of both Rules 35 and 41 as charged by Officer McArtor. The disciplinary committee ordered that Mr. McGowan serve five days of disciplinary detention, thirty days of disciplinary detention level one, and further ordered that he lose sixteen days of good time credit. At the same time, Mr. McGowan was found guilty of other charges not based on "false statements" or "defamation" as the result of which he was ordered to serve ten days disciplinary detention, ninety days of disciplinary detention level one, and to lose sixteen days of good time credit. Mr. McGowan's appeal to the warden of the IMR was denied by the warden's designee. However, Mr. McGowan's discipline for false statements and defamation was subsequently expunged from his record and his good time credit was restored.

Mr. Welsh asserts that his troubles began when he filed a "kite" with Warden Thalacker, that is, a direct communication with the warden rather than a formal grievance filed through the administrative grievance system. In the "kite," properly identified as a "Request for Interview," and dated March 21, 1994, Mr. Welsh stated that an "Officer Wilson" "threatened [him] + wrote a bogus report [and] he threaten[e]d me by raising his fist in a threat[e]ning manner." Mr. Welsh's Request For Interview, Plaintiffs' Exhibit 1. On March 24, 1994, an Officer Weber, who had been improperly identified by Mr. Welsh as "Officer Wilson," filed a disciplinary report against Mr. Welsh, stating that he learned of Mr. Welsh's "kite" to the warden from Lt. Salviati, and asserting that he had never made any threatening gestures or done anything else that could be perceived as a threat. Officer Weber's disciplinary report charged Mr. Welsh with violating IMR Rule 35 against making "false statements." During his disciplinary hearing, Mr. Welsh asserted that federal law prohibited IMR officials from punishing him for statements made in a "kite" or grievance. On April 1, 1994, the disciplinary committee, which included Mr. Brimeyer, found Mr. Welsh guilty of a "false statement" in violation of IMR Rule 35. The committee's report states that "we are unimpressed with his claim of a federal law that claims one cannot be punished for what is said in a kite or a grievance. This was not a grievance." As the result of the guilty finding for making a "false statement," Mr. Welsh was ordered to serve five days in disciplinary detention, thirty days in disciplinary detention level

one, and to lose sixteen days of good time credit.

Defendants admit that on two other occasions, Mr. Welsh was disciplined for statements made in grievances or in the course of "informal" efforts to resolve a grievance, despite Mr. Welsh's assertion of the same defense of the protection of federal law. However, the record does not contain documentation of these disciplinary proceedings, so that the court is unable to determine precisely what statements were made, or whether the discipline imposed was for "false statements" or "defamation" in violation of either IMR Rule 35 or IMR Rule 41. However, in these latter two cases, it is undisputed that the discipline was expunged, in one case, voluntarily by the IMR in August of 1994, and, in the other case, as the result of an order of the Iowa District Court.

Finally, Mr. Brimeyer admits that he learned of the decision of the Eighth Circuit Court of Appeals in *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989), sometime after disciplinary action was taken against Toby Welsh.

### 2. Disputed facts

Defendants raise various disputes of fact which they assert preclude summary judgment in favor of plaintiffs in this case. First, they assert that there is a dispute as to whether or not the plaintiffs could each have been disciplined for the statements contained in their grievances or kites if they had made those same statements orally directly to members of the IMR staff. They also assert that there is a genuine issue of material fact as to whether Mr. Welsh was on one occasion disciplined for statements in a "kite" rather than a "grievance." This asserted dispute of fact appears to be whether a "kite" is factually similar to a "grievance" in the IMR system. The court, of course, will determine whether the two kinds of inmate communications or complaints are entitled to similar, if any, legal protection of the kind plaintiffs claim.

Defendants also dispute the amount of time Mr. McGowan was ordered to serve for "false statements" and "defamation," as opposed to the amount of time he served for a disciplinary report disposed of at the same time. However, the court identified above the discipline imposed on Mr. McGowan on the basis of the actual disposition of the disciplinary report, which matches plaintiffs' recitation of the facts in their brief, although it does not match the recitation in the plaintiffs' statement of undisputed facts. Hence, the court does not believe that there is any genuine issue of material fact as to the disciplinary detention Mr. McGowan served for "false statements" and "defamation." Instead, there is a misstatement of the disciplinary sanctions in the plaintiffs' statement of material fact that is corrected in their brief.

Finally, defendants contend that there is a genuine issue of material fact as to whether Mr. Hancock's right to petition was "chilled" as the result of any discipline or threat of discipline, because he continued to write copious grievances. Defendants assert that Mr. Hancock abused the grievance system and was restricted in the number of grievances he was allowed to write, but not in the content of those grievances. Defendants therefore concede that there is a policy of restricting the number of grievances an inmate may file, but assert that there is a genuine issue of material fact as to the existence of any policy or practice of disciplining prisoners for the contents of grievances. The court agrees. Although five inmates have, from time to time, been involved in this litigation asserting claims of similar treatment, plaintiffs have not presented any evidence of an official statement of the IMR or any other undisputed evidence of a policy to subject inmates to such treatment. Nor does the evidence of the treatment of these plaintiffs amount to an undisputed practice of disciplining inmates for the content of their grievances. A reasonable inference to be drawn from the record is that the incidents involving these five inmates were isolated events, if indeed, the circumstances of such incidents were otherwise wholly undisputed.

The court finds that the record indicates another genuine issue of material fact that may be critical to the disposition of the plaintiffs' motion for summary judgment. That issue is what standard of proof, some evi-

dence, a preponderance of the evidence, clear and convincing evidence, or proof beyond a reasonable doubt, was applied in determining that the plaintiffs had made "false" or "defamatory" statements of their grievances in violation of IMR rules.

## II. LEGAL ANALYSIS

### A. Renewed Motion For Class Certification

The first of the pending motions the court will consider here is the plaintiffs' renewed motion for class certification. Plaintiffs seek to certify a class defined quite broadly in their Second Class Action Complaint as "all persons who have been, are now, or in the future will be confined in the Iowa Men's Reformatory," and more narrowly in their renewed motion as "all persons who have been, are now, or in the future will be confined in the Iowa Men's Reformatory *disciplinary lockup because of comments made in grievances.*" Plaintiffs suggest that the members of the class are "all persons who have been, are now or will be prisoners at the Iowa Men's Reformatory regardless of whether they [are or were] disciplined as Mr. Welch [sic], Mr. Luncsford and McGowan [sic] were or were threatened as Mr. Hancock was."

Plaintiffs contend that certification of a class is necessary, because approximately one thousand five hundred inmates currently reside at the IMR, and an unknown number of inmates has passed through the institution in the past two years. Furthermore, they contend that the population of the IMR is constantly growing or changing. These uncertainties as to numbers of potential plaintiffs and the realities of incarceration, plaintiffs argue, mean it is impossible to determine who has been or will be intimidated by the IMR's policy and practice of disciplining prisoners for statements made in grievances. These numbers also mean, plaintiffs argue, that individual adjudication of all possible claims would likely result in inconsistent and varying decisions creating conflicting or incompatible standards of conduct for the defendants. Furthermore, plaintiffs contend that all of the purported class members can assert common questions of law and

fact, which plaintiffs here specify as "factual allegations of disciplinary actions taken in retaliation for the filing of grievances at the Iowa Men's Reformatory," and the legal issues raised in the representative plaintiffs' complaint, as this court has observed, whatever those legal issues may be construed to be. Plaintiffs also assert that their own claims are representative of the members of the class, because "[t]he named plaintiffs have been disciplined for statements made in a grievance to Iowa Men's Reformatory officials," and "[o]ther inmates have been intimidated into not filing grievances because of the policy [of so disciplining inmates]."

The defendants object to certification of this class on a number of grounds. First, defendants contend that there is no policy of disciplining inmates for statements made in grievances as alleged by plaintiffs, although there is a policy restricting the number of grievances inmates may file. Consequently, they contend that there is no common question of law or fact among members of the putative class nor any numerous class of persons subjected to such a policy. Furthermore, they contend that the numerosity requirement for class certification cannot be met, because assertion that the plaintiffs and two non-parties claim to have been intimidated or threatened with discipline or in fact were disciplined for the content of their grievances is insufficient. Next, they argue that Mr. Hancock's claims are atypical, or individual, rather than typical of any class, because efforts to curb the number of complaints he was filing did not affect any other members of a putative class, and he was not actually disciplined, as the other representatives were, for statements made in a grievance. Defendants also contend that, because of the lack of any "policy" as asserted by plaintiffs, the individual claims of the plaintiffs should be adjudged individually, because they in no way represent claims of a class of persons.

The court has already rejected arguments similar to plaintiffs' proffered in Mr. Hancock's first motion for class certification. There are only limited changes in circumstances or supporting documentation proffered in support of the renewed motion for

class certification. Instead of only two plaintiffs to support the original class action, one of whom has disappeared, there are now four purported class representatives, although one of those putative representative plaintiffs has been dismissed from this action for failure to file an *in forma pauperis* application or pay the required filing fee. Thus, there has been a net gain of one identified plaintiff actually asserting claims similar to those apparently asserted in the class action. In addition to the net gain of one person actually attempting to join the litigation, plaintiffs have also submitted the affidavits of Arthur Scott Fetters and Daveed Bachar HaBreet, a/k/a Arthur Tripplett. These affiants assert that they have in the past desired to file grievances regarding things done to them by members of the IMR staff, but have not done so because they feared harassment, retaliation, or repercussions, and further asserting, in the case of Mr. HaBreet, that he had seen other inmates so harassed for filing grievances. However, these assertions parallel only one of the four claims the court has construed the Second Class Action Complaint as advancing, the First Amendment "right of petition" retaliation claim, but do not indicate the retaliation these affiants feared was the same as that feared or suffered by the putative representatives, *i.e.*, disciplinary reports for false or defamatory statements, or even what the retaliation these affiants feared was. The affidavit of Mr. Thompson, that he is personally aware of more than twenty-five inmates who "have either received or were threatened with disciplinary actions if they filed a grievance," and that he has been told several times by inmates that they feared retaliation or harassment by correctional staff if they filed grievances, is similarly flawed, because it fails to indicate comparable kinds of retaliation.

█ Once again, the court concludes that plaintiffs have failed to meet the numerosity requirement for class certification pursuant to *Fed.R.Civ.P.* 23 as well as other requirements of the rule. In order to obtain class certification, the putative representatives bear the burden of showing that the class should be certified and that the requirements of *Fed.R.Civ.P.* 23 are met. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir.1994) (cit-

ing *Smith v. Merchants & Farmers Bank of West Helena*, 574 F.2d 982, 983 (8th Cir. 1978)); *Howe v. Varity Corp.*, 896 F.2d 1107, 1111 (8th Cir.1990). The district court's determination of whether or not to certify a class will be set aside only if there was an abuse of discretion. *Coleman*, 40 F.3d at 259; *Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1323 (8th Cir.1991) (" 'A district court has broad discretion in determining whether to certify a class, and its determination will not be overturned absent a showing that it abused its discretion,' " quoting *Gilbert v. City of Little Rock*, 722 F.2d 1390, 1399 (8th Cir.1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984)), *rev'd on other grounds*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993); *Belles v. Schweiker*, 720 F.2d 509, 515 (8th Cir.1983).

Rule 23(a) of the Federal Rules of Civil Procedure identifies the prerequisites for a class action as follows:

> **(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Fed.R.Civ.P.* 23(a). The Eighth Circuit Court of Appeals has required some specificity in the allegations on the part of plaintiff upon which to base class certification. *See, e.g., Coleman*, 40 F.3d at 258–59.

The "numerosity" requirement has produced no rule of thumb in this circuit as to how many potential class members is enough. *Belles*, 720 F.2d at 515 ("no arbitrary rules regarding the necessary size of classes have been established."); *but see Richter v. Bowen*, 669 F.Supp. 275, 281 n. 4 (N.D.Iowa 1987) (recognizing that some courts apply a rule of thumb that a class of over 40 persons is sufficiently numerous, citing 3B J. Moore, *Moore's Fed. Procedure* 23.05[1] ). Instead,

the Eighth Circuit Court of Appeals often refers to the language of the rule itself that the class must be "so numerous that joinder of all members is impracticable." *Fed. R.Civ.P.* 23(a); *Coleman*, 40 F.3d at 258; *Arthur Young & Co.*, 937 F.2d at 1323; *Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 609 (8th Cir.1983), *cert. denied*, 469 U.S. 847, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984); *Belles*, 720 F.2d at 515; *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir.1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983). Some time ago, the Eighth Circuit Court of Appeals identified a number of factors relevant to this requirement of Rule 23(a), "the most obvious of which is, of course, the number of persons in the proposed class." *Paxton*, 688 F.2d at 559. Thus, the Eighth Circuit Court of Appeals has held that "seven former employees" is not enough, *Tate*, 723 F.2d at 609, while 1,685 potential plaintiffs was a sufficiently large number. *Arthur Young & Co.*, 937 F.2d at 1323.

However,

> [i]n addition to the size of the class, the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members.

*Paxton*, 688 F.2d at 559–60; *see also Tate*, 723 F.2d at 609 (it is appropriate for the district court to consider "that trying the individual suits would not be inconvenient because it could examine the factual basis of" each class member's complaint). The putative representative may fail its burden to show numerosity where he or she does not actually identify even the approximate size of the class or demonstrate the impracticability of joinder. *Belles*, 720 F.2d at 515. In *Coleman*, the named representative had failed to justify his claim of numerosity "with any reliable standards or estimates," and thus the district court did not err in concluding that the named representative had failed to establish the existence of a group of identifiable plaintiffs appropriate for class certification. *Coleman*, 40 F.3d at 258; *and compare Arthur Young & Co.*, 937 F.2d at 1323.

In the present case, the court finds that the plaintiffs have again produced no reliable standards or estimates for the numerosity of the asserted class. *Coleman*, 40 F.3d at 258. Although plaintiffs have provided an estimate of the current population of the IMR, and assert that determining how many inmates passed through the IMR in the last two years or will do so in the near future is impossible, plaintiffs fail to identify even the approximate size of the class of persons actually subjected to the assertedly unconstitutional conduct in question, discipline or intimidation for statements made in grievances, or to demonstrate the impracticability of joinder when so few people have actually been identified as having comparable claims. *Belles*, 720 F.2d at 515. Instead, plaintiffs rely on conclusory statements that anyone who has ever been or ever will be an inmate at the IMR is a class member. The court reiterates that such conclusory statements will not do. At a minimum, the court concludes that plaintiffs should have produced some reliable estimate of the number of inmates who have been disciplined for statements made in grievances or kites to IMR officials. *Coleman*, 40 F.3d at 258. They have not even attempted such an estimate, as the affidavits of Fetters, HaBreet, and Thompson do not provide such information. Furthermore, plaintiffs have been able to identify no other potential class members by name. Again, Fetters and HaBreet do not fall into this category, because their affidavits do not indicate that statements in grievances had anything to do with their concerns about retaliation. All of the potential class members identified could practicably intervene in the present litigation. *Fed. R.Civ.P.* 23(a); *Coleman*, 40 F.3d at 258; *Arthur Young & Co.*, 937 F.2d at 1323; *Tate*, 723 F.2d at 609; *Belles*, 720 F.2d at 515; *Paxton*, 688 F.2d at 559.

The court also finds that plaintiffs cannot meet the commonality and typicality requirements of Rule 23(a). *See, e.g., DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174–75 (8th Cir.1995) (finding that "commonality and typicality" are separate but related requirements of class certification under Rule 23(a)), *cert. denied sub nom. Crehan v. DeBoer*, ——

U.S. ——, 116 S.Ct. 1544, 134 L.Ed.2d 648 (1996). In *DeBoer,* the Eighth Circuit Court of Appeals explained that

> [c]ommonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when the legal question " 'linking the class members is substantially related to the resolution of the litigation.' " *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561 (8th Cir.1982) (quoting *American Fin. Sys., Inc. v. Harlow,* 65 F.R.D. 94, 107 (D.Md.1974)), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983).

*DeBoer,* 64 F.3d at 1174. The court therefore upheld class certification when the "main point of contention" for all class members was the same. *Id.* However, beyond the few plaintiffs who have presented themselves by name, the plaintiffs have presented no indication that there is a class of persons linked by substantially related legal questions or a "main point of contention." *Id.* Whether all of the persons identified in the supporting affidavits were intimidated by a fear of retaliation for filing grievances is simply too broad; the main point of contention of the class action complaint is whether the discipline, retaliation, or intimidation would be based on the *content* of the grievances. Neither the supporting affidavits nor anything else offered by plaintiffs demonstrates that there is such a class with this point of commonality.

As to "typicality," the Eighth Circuit Court of Appeals observed that "[t]he burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *Id.* (again citing *Paxton,* 688 F.2d at 562). However, plaintiffs have failed to demonstrate that there is anyone, let alone a class of individuals, besides the named plaintiffs, whose constitutional rights have been violated in any of the four ways the court has construed the named plaintiffs to contend their rights were violated.

Finally, it is likely "that trying the individual suits would not be inconvenient because [the court] could examine the factual basis of" the complaints of each of the three asserted class members, or the five asserted

class members, if Avila, who has disappeared, and Luncsford, who has been dismissed, are counted. *Tate,* 723 F.2d at 609. The court once again denies plaintiffs' motion for class certification. The court therefore turns to the question of whether the named plaintiffs who remain in this litigation, Mr. Hancock, Mr. Welsh, and Mr. McGowan, are entitled to summary judgment on any of their individual claims.

## B. Plaintiffs' Motion For Summary Judgment

### 1. Standards for summary judgment

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly sixty years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir. 1992).

The standard for granting summary judgment is well established. *Rule 56* of the Federal Rules of Civil Procedure states in pertinent part:

> Rule 56. Summary Judgment
>
> (a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits

for a summary judgment in the party's favor upon all or any part thereof.

\* \* \* \* \* \*

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Reliance Ins. Co. v. Shenandoah South, Inc.,* 81 F.3d 789, 790 (8th Cir.1996); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir. 1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir. 1990); *Wabun–Inini,* 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[10] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here the defendants, and give the defendants the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Rifkin v. McDonnell Douglas Corp.,* 78 F.3d 1277, 1280 (8th Cir.1996); *Marts v. Xerox, Inc.,* 77 F.3d 1109, 1112 (8th Cir.1996); *Munz v. Michael,* 28 F.3d 795, 796 (8th Cir. 1994); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

■ Procedurally, the moving parties, the plaintiffs here, bear "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). The plaintiffs are not required by Rule 56 to support their motion with affidavits or other similar materials negating the opponent's claim. *Id.*

■ "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Thus, the defendants are required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed. R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Prods., Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.

---

**10.** An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir.1994).

In *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510, *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552). If the defendants fail to make a sufficient showing of an essential element of a claim with respect to which they have the burden of proof, then the plaintiffs are "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Woodsmith*, 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Burk*, 948 F.2d at 492; *Woodsmith*, 904 F.2d at 1247.

### 2. Standards for amendment

Although this matter is presented on a motion for summary judgment on the Second Class Action Complaint, the court has still not been asked to grant leave, nor has it granted leave, to file the Second Class Action Complaint as an amendment to the original complaint adding new plaintiffs, new claims by those plaintiffs, a new defendant, and instituting new claims against a defendant previously dismissed. As the court concluded above, in order to place this matter on the proper procedural footing for consideration of summary disposition, the court must assess whether any of the claims asserted by the "new" plaintiffs are so futile as to preclude their injection into this litigation, applying the standards applicable to a motion to amend pursuant to *Fed.R.Civ.P.* 15; *see also* 28 U.S.C. § 1915(d) (*in forma pauperis* plaintiffs may be barred from asserting frivolous claims, which this court views as comparable to the non-futility requirement for amendment). The court will therefore also briefly state the standards applicable to a motion for leave to amend.

The Federal Rules of Civil Procedure provide that, except in circumstances not present here, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Fed.R.Civ.P.* 15(a). The Supreme Court has stated that the granting of leave to amend is within the discretion of the district court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). Federal courts have generally and consistently recognized that the rules governing the amendments of pleadings are to be construed liberally. *Standard Title Ins. Co. v. Roberts*, 349 F.2d 613, 622 (8th Cir.1965). The leave sought should be "freely given" in the absence of any justifiable reason for denial of the motion—such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the defendant or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

In interpreting the liberal policy underlying motions to amend pursuant to *Fed.R.Civ.P.* 15(a), the United States Court of Appeals for the Eighth Circuit has used terms nearly identical to those used by the Supreme Court in the *Foman* decision, stating that

[u]nder this policy, only limited circumstances justify a district court's refusal to grant leave to amend pleadings; undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party.... This court will review the district court's refusal to grant leave to amend under the abuse of discretion standard. *Norbeck v. Davenport Community School District*, 545 F.2d

63, 70 (8th Cir.1976), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977). *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987) (citation omitted); *see also Fuller v. Secretary of Defense of U.S.*, 30 F.3d 86, 88 (8th Cir.) ("Leave to amend should be granted absent a good reason for the denial, such as undue delay, bad faith, undue prejudice to the nonmoving party, or futility," citing *Thompson–El v. Jones*, 876 F.2d 66, 67 (8th Cir.1989)), *cert. denied*, —— U.S. ——, 115 S.Ct. 583, 130 L.Ed.2d 497 (1994); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 225 (8th Cir.1994) ("Good reason to deny leave to amend exists if the amendment would be futile," citing *Foman*, 371 U.S. at 182, 83 S.Ct. at 230, and *Thompson–El*, 876 F.2d at 67); *Costello, Porter, Hill, Heisterkamp & Bushnell v. Providers Fidelity Life Ins. Co.*, 958 F.2d 836, 839 (8th Cir.1992); *Standard Title*, 349 F.2d at 622.

With these standards in mind, the court turns to consideration of the plaintiffs' motion for summary judgment and, in the course of such consideration, will determine the question *ante*, which is whether any of the claims in the Second Class Action Complaint are so futile, and hence frivolous, as to preclude an amendment asserting them, let alone their favorable summary disposition.

### 3. *Claims against defendants Thalacker and Salviati*

■ The court need not probe the legal merits of the claims asserted in the Second Class Action Complaint against defendants Thalacker and Salviati, however, to determine that such claims are futile. As the court observed in its initial review order, "liability under [42 U.S.C.] § 1983 requires a causal link to, and direct responsibility for the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir.1990). Before liability may be imposed under § 1983, a plaintiff must show that each defendant either did some affirmative act, participated in the affirmative act of another, or failed to perform an act which resulted in the deprivation of the plaintiff's federally-protected rights. *See Stevenson v. Koskey*, 877 F.2d 1435 (9th Cir.1989). Thus, a plaintiff must present specific allegations of fact as to either direct personal involvement, direction of others, or a knowing failure to train, supervise, or act, which resulted in the plaintiff's injuries. Liability under § 1983 may not be grounded upon a *respondeat superior* theory. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202–03, 103 L.Ed.2d 412 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Monell v. Department of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir.1993); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir.1989); *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir.1989); *Bolin v. Black*, 875 F.2d 1343, 1347 (8th Cir.), *cert. denied*, 493 U.S. 993, 110 S.Ct. 542, 107 L.Ed.2d 539 (1989). Furthermore, supervisors can incur liability under § 1983 "for their personal involvement in a constitutional violation," or "when their corrective inaction amounts to 'deliberate indifference' to or 'tacit authorization' of the violative practices." *Choate*, 7 F.3d at 1376.

■ Because the doctrine of *respondeat superior* does not apply to a § 1983 action, a superior such as defendant Thalacker cannot be held individually liable unless he affirmatively participated or acquiesced in the constitutional violations. *Id.* Here, although the "new" plaintiffs, Mr. Welsh and Mr. McGowan, make new allegations referring to former defendant Thalacker, these new allegations do not allege that defendant Thalacker participated in any of the alleged acts, or that he knew of such acts and acquiesced in their occurrence. Consequently, defendant Thalacker is once again dismissed from this lawsuit, as the new claims against him are futile. *See Foman*, 371 U.S. at 182, 83 S.Ct. at 230; *Fuller*, 30 F.3d at 88; *Williams*, 21 F.3d at 225; *Costello, Porter, Hill, Heisterkamp & Bushnell*, 958 F.2d at 839; *Thompson–El*, 876 F.2d at 67; *Sanders*, 823 F.2d at 216; *Standard Title*, 349 F.2d at 622; *see also* 28 U.S.C. § 1915(d) (providing for dismissal of "frivolous" claims of *in forma pauperis* litigants).

The flaw in the assertion of any claims against defendant Salviati is even more fundamental: there simply are no allegations in

the Second Class Action Complaint that he did anything at all. Defendant Salviati is named in the caption of the Second Class Action Complaint and identified as a defendant in the list of parties, Second Class Action Complaint, ¶ 11. However, nowhere else in the Second Class Action Complaint is there any mention of defendant Salviati or allegations concerning his conduct. In an analogous situation, this court recognized the Alice–In–Wonderland quality that pervades pleadings in which no allegations are made against a person appearing in the caption of the complaint. *Dahl v. Kanawha Investment Holding Co.,* 161 F.R.D. 673, (N.D.Iowa 1995). Because of the lack of any allegations of conduct by defendant Salviati in the Second Class Action Complaint,[11] claims against defendant Salviati are dismissed as futile. *See Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Fuller,* 30 F.3d at 88; *Williams,* 21 F.3d at 225; *Costello, Porter, Hill, Heisterkamp & Bushnell,* 958 F.2d at 839; *Thompson–El,* 876 F.2d at 67; *Sanders,* 823 F.2d at 216; *Standard Title,* 349 F.2d at 622; *see also* 28 U.S.C. § 1915(d) (providing for dismissal of "frivolous" claims of *in forma pauperis* litigants).

### 4. *"Due process" claims*

■■■ The first candidate for a claim asserted by these plaintiffs is some kind of "due process" claim under the Fourteenth Amendment. *See* Second Class Action Complaint, ¶¶ 2, 14, and prayer subdivision (b). The court notes that due process claims are generally subjected to a two-part analysis: (1) is the asserted interest protected by the due process clause; and (2) if so, what process is due. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982); *Sanders v. Woodruff,* 908 F.2d 310, 312 (8th Cir.), *cert. denied sub nom. Herron v. Woodruff,* 498 U.S. 987, 111 S.Ct. 525, 112 L.Ed.2d 536 (1990); *Tyler v.*

*Black,* 811 F.2d 424, 427 (8th Cir.1987), *adopted in relevant part,* 865 F.2d 181 (8th Cir.1987) *(en banc), cert. denied,* 490 U.S. 1027, 109 S.Ct. 1760, 104 L.Ed.2d 196 (1989); *see also Youakim v. McDonald,* 71 F.3d 1274, 1288 (7th Cir.1996) (two-step analysis of due process claim, citing *Logan), cert. denied,* —— U.S. ——, 116 S.Ct. 2571, 135 L.Ed.2d 1087 (1996). In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court wrote, "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews,* 424 U.S. at 332, 96 S.Ct. at 901; *see also Jennings v. Lombardi,* 70 F.3d 994, 995 (8th Cir.1995) (Fourteenth Amendment prohibits government from depriving any person of property without due process of law, citing *Board of Regents v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972)); *Demming v. Housing and Redev. Auth.,* 66 F.3d 950, 953 (8th Cir.1995) (quoting *Mathews* ). The possession of a protected life, liberty, or property interest is thus a "condition precedent" to the government's obligation to provide due process of law, and where no such interest exists, there is no due process violation. *Movers Warehouse, Inc. v. City of Little Canada,* 71 F.3d 716, 718 (8th Cir.1995); *Zenco Dev. Corp. v. City of Overland,* 843 F.2d 1117, 1118 (8th Cir.1988) ("A discussion of whether a party has a right to procedural due process must start with the question of whether the party has a property interest in the thing taken away.").

■■■ Protected interests "are created and their dimensions are defined" not by the Constitution but by an independent source, such as state or federal law. *Movers Warehouse,* 71 F.3d at 718 (citing *Craft v. Wipf,* 836 F.2d 412, 416 (8th Cir.1987)); *Zenco Dev.*

---

11. The court recognizes that plaintiffs' *brief* in support of their motion for summary judgment suggests that defendant Salviati ordered other IMR officers to file disciplinary reports against inmates for "false" or "defamatory" statements against those officers, but the Second Class Action Complaint contains no such allegations. The court has gone about as far as it intends to go in liberally construing plaintiffs' submissions, particularly in light of their representation by counsel. The court will not go so far as to inject allegations from a brief into a complaint where related allegations in the complaint are completely lacking, not simply in need of clarification. Counsel for plaintiffs knows the elementary requirement of pleading that allegations against each named defendant must be made in a complaint. *See, e.g., Fed.R.Civ.P.* 8.

*Corp.*, 843 F.2d at 1118. Thus, at least until recently, the due process claims of prisoners have involved an analytical methodology formulated in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), which had focused on whether a rule or policy of the state is cast in "language of an unmistakably mandatory character" such that incursion on liberty would not occur "absent specified substantive predicates." *Hewitt*, 459 U.S. at 471–72, 103 S.Ct. at 871. However, in *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Court cast aside the *Hewitt* methodology. *Id.* at ——, 115 S.Ct. at 2299. This court has recently considered the implications of *Sandin* for prisoner due process claims based on the prisoner's placement in punitive or administrative segregation. *See Bruns v. Halford*, 913 F.Supp. 1295 (N.D.Iowa 1995). In *Bruns*, this court noted that *Sandin* had shifted the "due process" analysis of prisoner claims away from a parsing or sifting of the language of prison rules or policies, which might establish the prisoner's liberty or property interest, and back to an analysis of the "nature" of the deprivation imposed on a prisoner by his segregation. *Id.* at 1300–01.

■■■ In this case, in which prisoners complain about their placement in punitive segregation as the result of discipline for statements made in grievances, the court is simply at a loss to determine what interest or inadequate process is the source of their complaint. The court presumes that the interest is a "liberty" interest in not being placed in punitive segregation for an improper reason. However, of all of the potential claims the court has construed the Second Class Action Complaint as attempting to state, the "due process" claim is the most formless, based entirely on *non sequitur* references to the "Fourteenth Amendment" and "due process" in the complaint itself. *See* Second Class Action Complaint, ¶¶ 2, 14, and prayer subdivision (b). Furthermore, the plaintiffs' brief in support of their motion for summary judgment does not clarify the contours of any "due process"

claim. Instead, the plaintiffs contend that there is nothing about the *Sandin* decision that applies here, because the Ninth Circuit Court of Appeals has held that a "retaliation" claim is unaffected by the *Sandin* decision, citing *Pratt v. Rowland*, 65 F.3d 802 (9th Cir.1995).

Looking to the *Pratt* decision for some guidance as to the nature of the claims plaintiffs here may be asserting, the court concludes that *Sandin* is indeed inapplicable for the same reasons that *Pratt* court reached that conclusion. The Ninth Circuit Court of Appeals concluded in *Pratt* that *Sandin* had no effect upon "retaliation" claims, because such claims *were not based in the "due process" clause of the Fourteenth Amendment.* *Pratt*, 65 F.3d at 807. The "retaliation" claim at issue was alleged retaliation for exercise of *First Amendment free speech rights* by transferring Pratt to solitary confinement. *Id.* (causes of action similar to Pratt's "fall within the 'other protection[s] from arbitrary state action' which the court appears to envision [in *Sandin*, —— U.S. at —— n. 11, 115 S.Ct. at 2302 n. 11], because they are based upon protection of the prisoners' First Amendment rights, and not their Due Process rights."). Thus, not only is *Sandin* inapplicable, but the court concludes that plaintiffs have in fact eschewed a Fourteenth Amendment "due process" claim entirely. Were plaintiffs attempting to assert a "due process" violation on the basis of disciplinary sanctions, the court concludes that they could not do so under the holding of *Sandin*. *Sandin*, —— U.S. at ——, 115 S.Ct. at 2302; *Bruns*, 913 F.Supp. at 1304.[12]

Any "due process" claims of the "new" plaintiffs are therefore futile, and leave to amend to assert such claims is denied. *Foman*, 371 U.S. at 182, 83 S.Ct. at 230; *Fuller*, 30 F.3d at 88; *Williams*, 21 F.3d at 225; *Costello, Porter, Hill, Heisterkamp & Bushnell*, 958 F.2d at 839; *Thompson–El*, 876 F.2d at 67; *Sanders*, 823 F.2d at 216; *Standard Title*, 349 F.2d at 622; *see also* 28 U.S.C. § 1915(d) (providing for dismissal of "frivolous" claims of *in forma pauperis* liti-

---

**12.** Thus, the Fourteenth Amendment is implicated in plaintiffs' complaint only to the extent that what is at issue appears to be the Fourteenth Amendment's effect of making other constitutional provisions applicable to the states.

gants). Plainly, in light of this failing of such claims as a matter of law, plaintiffs are not entitled to summary judgment on any "due process" claims either. *Fed.R.Civ.P.* 56(c); *see also Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Reliance Ins. Co.,* 81 F.3d at 790; *Beyerbach,* 49 F.3d at 1325.[13]

### 5. *"Free speech" claims*

■ The second claim, or legal theory, the court has construed the Second Class Action Complaint as attempting to assert is a First Amendment "free speech" claim as the result of discipline for *statements in* grievances. This is the kind of "retaliation" claim recognized by the Ninth Circuit Court of Appeals in *Pratt* as falling outside the reach of the *Sandin* decision. *Pratt,* 65 F.3d at 807.

The Supreme Court in *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), recognized that prisoners retain certain First Amendment rights of free speech. Thus, "In the First Amendment context a corollary of this principle [that lawful incarceration brings about limitations on privileges and rights] is that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell,* 417 U.S. at 822, 94 S.Ct. at 2804; *Hudson v. Palmer,* 468 U.S. 517, 523, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984) (quoting *Pell*); *Leonard v. Nix,* 55 F.3d 370, 374 (8th Cir. 1995) (quoting *Pell*).

The Fifth and Third Circuit Courts of Appeals have noted that " '[t]he precise contours of a prisoner's right to free speech are ... obscure.' " *Bieregu v. Reno,* 59 F.3d 1445, 1452 (3d Cir.1995) (quoting *Brewer v. Wilkinson,* 3 F.3d 816, 821 (5th Cir.1993), *cert. denied,* 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994)). Nonetheless, the Eighth Circuit Court of Appeals has recognized that impingements on prisoners' First Amendment rights to free speech exercised in *outgoing mail* "are justified only if the regulation or practice in question furthers an important governmental interest of security, order, or rehabilitation, and the limitation on the prisoner's retained First Amendment rights must be no greater than is necessary to protect the governmental interest." *Leonard,* 55 F.3d at 374 (citing *Procunier v. Martinez,* 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974)). However, when the exercise of free speech rights occurs within the prison walls, the impingement on those rights must only meet the lesser standard of *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987), which requires that a prison rule, regulation, policy, or decision be "reasonably related to legitimate penological interests." *See Thornburgh v. Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 1881, 104 L.Ed.2d 459 (1989) (limiting *Martinez's* least restrictive means test to outgoing correspondence); *Thongvanh v. Thalacker,* 17 F.3d 256, 259 (8th Cir.1994) (same); *Loggins v. Delo,* 999 F.2d 364, 367 (8th Cir.1993) (recognizing that *Martinez* is limited to outgoing correspondence, while *Turner* applies to impingement on freedom of expression in other contexts); *Smith v. Delo,* 995 F.2d 827, 829 (8th Cir.1993) (applying the *Turner* standard to incoming and outgoing correspondence), *cert. denied,* 510 U.S. 1052, 114 S.Ct. 710, 126 L.Ed.2d 676 (1994); *Sisneros v. Nix,* 884 F.Supp. 1313, 1326 (S.D.Iowa 1995) (concluding that *Abbott* limited *Martinez* test to outgoing mail and applying *Turner* test to an inmate's First Amendment free speech claim); *see also Beville v. Ednie,* 74 F.3d 210, 214 (10th Cir. 1996) (*Abbott* limited *Martinez* to outgoing mail); *Brewer,* 3 F.3d at 821–25 (discussing the applicability of *Martinez* and *Turner* to prisoners' speech in different contexts). The Eighth Circuit Court of Appeals has also recognized that prison officials may not retaliate against prisoners for exercising their constitutional rights. *See, e.g., Sterling v. Wood,* 68 F.3d 1124, 1126 (8th Cir.1995) ("[P]rison officials may not 'retaliate' against a prisoner for exercising his constitutional right of access to the court...."); *Hazen v. Reagen,* 16 F.3d 921, 925 (8th Cir.1994) (holding it is impermissible to retaliate against a

**13.** Because plaintiff Hancock's "due process" claims, if any, are similarly futile, the court anticipates that Mr. Hancock will voluntarily withdraw such claims or that defendants will swiftly file their own motion for summary judgment on such claims.

prisoner for the exercise of a constitutional right); *Goff v. Burton,* 7 F.3d 734, 737 (8th Cir.1993) (same), *cert. denied,* —— U.S. ——, 114 S.Ct. 2684, 129 L.Ed.2d 817 (1994); *Ponchik v. Bogan,* 929 F.2d 419, 420 (8th Cir. 1991) (same); *Murphy v. Missouri Dep't of Correction,* 769 F.2d 502, 503 (8th Cir.1985) (same).

However, before either the standards for impingement on "free speech" rights are applied or a question of retaliation for exercise of constitutional rights arises, "the threshold of an infringement upon constitutional rights" must be crossed. *Taylor v. Coughlin,* 29 F.3d 39, 40 (2d Cir.1994). Defendants correctly contend that there is no constitutional protection *per se* for "false statements." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974) ("[T]here is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues. *New York Times Co. v. Sullivan,* 376 U.S., at 270, 84 S.Ct., at 721. They belong to that category of utterances which 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.' *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942)."); *see also Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18, 110 S.Ct. 2695, 2705–06, 111 L.Ed.2d 1 (1990) (neither false statements nor opinions that imply a false assertion of fact are protected by the First Amendment); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 777, 96 S.Ct. 1817, 1833, 48 L.Ed.2d 346 (1976) (Stewart, J., concurring) ("The Court has on several occasions addressed the problem posed by false statements of fact in libel cases. Those cases demonstrate that even with respect to expression at the core of the First Amendment, the Constitution does not provide absolute protection for false factual statements that cause private injury," citing *Gertz,* 418 U.S. at 340, 94 S.Ct. at 3007); *Secrist v. Harkin,* 874 F.2d 1244, 1248 (8th Cir.1989) (civil liability may be imposed for false statements of fact, but not for opinions, which are protected by the First Amendment, citing *Gertz,* 418 U.S. at 339, 94 S.Ct. at 3006–07); *see also Partington v. Bugliosi,* 56 F.3d 1147, 1155 (9th Cir.1995) ("[A] particular statement of opinion may imply a false assertion of fact and therefore fall outside the scope of the First Amendment's protection as limited by *Milkovich.*"); *Standing Committee on Discipline of the U.S. Dist. Court for the Cent. Dist. of Cal. v. Yagman,* 55 F.3d 1430, 1438 (9th Cir.1995) (attorney who impugns the integrity of a judge loses First Amendment protection for statements that are false or imply a false assertion of fact); *Snead v. Redland Aggregates, Ltd.,* 998 F.2d 1325, 1333 (5th Cir.1993) ("False statements of fact are 'not worthy of constitutional protection,'" quoting *Gertz*). Instead, in certain circumstances, a heightened showing of knowledge of falsity, intent to make a false statement, or malice in making a false statement, is required before liability for false statements can be imposed to prevent a chilling effect on *protected,* that is, truthful, speech or to protect the viability of open debate in a free society. *See, e.g., Hustler Magazine v. Falwell,* 485 U.S. 46, 52, 108 S.Ct. 876, 880, 99 L.Ed.2d 41 (1988) ("[A] public figure may hold a speaker liable for the damage to reputation caused by publication of a defamatory falsehood, but only if the statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not,'" quoting *Sullivan,* 376 U.S. at 279–80, 84 S.Ct. at 726); *Herbert v. Lando,* 441 U.S. 153, 156–57, 99 S.Ct. 1635, 1638, 60 L.Ed.2d 115 (1979) (liability for defamation requires proof of malice, reckless disregard for the truth, or high degree of knowledge of probable falsity); *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964) (where the plaintiff was a public official or a public figure and the statement or publication concerned an issue of public interest and concern, the respondent escapes liability unless the plaintiff can prove publication of defamatory falsehood "with 'actual malice'—that is, with knowledge that it was false 'or with reckless disregard of whether it was false or not.'"); *Price v. Viking Penguin, Inc.,* 881 F.2d 1426, 1433 (8th Cir.1989)

(plaintiff in a defamation action based on statements made in the context of public debate could only prevail if she showed that defendants "acted with actual malice, reckless disregard for the truth, or had a high degree of knowledge of probable falsity," citing *Herbert*, 441 U.S. at 156–57, 99 S.Ct. at 1638), *cert. denied*, 493 U.S. 1036, 110 S.Ct. 757, 107 L.Ed.2d 774 (1990); *Secrist*, 874 F.2d at 1248–49 (robust political debate requires toleration of "a degree of derogation [of public figures] that others need not [tolerate]," and therefore requiring that public figure prove with "convincing clarity" that defamatory statements were made with "actual malice."); *see also Moore v. City of Wynnewood*, 57 F.3d 924, 933 (10th Cir.1995) ("We may assume that deliberately or recklessly false statements by public employees are either unprotected by the First Amendment or, at least, that such intentional falsity would weigh heavily against protection," citing *Pickering v. Board of Educ.*, 391 U.S. 563, 574, 88 S.Ct. 1731, 1737–38, 20 L.Ed.2d 811 (1968)).

Admittedly, some courts, including upon occasion the Supreme Court, have described this heightened burden of proof of falsity, knowledge or intent to make false statements, or malice in making such statements, as First Amendment "protection" of "false statements." However, even in these cases, it is clear that the "false statements" are not protected for their own value under the Constitution; instead, they invoke protections, requirements of heightened standards of proof and proof of intent, because of a core value of the First Amendment served by the kind of speech involved, such as political debate, which might be collaterally "chilled" without such protections. *See, e.g., Rubin v. Coors Brewing Co.*, —— U.S. ——, —— ——, 115 S.Ct. 1585, 1595–96, 131 L.Ed.2d 532 (1995) (Stevens, J., concurring) ("Although some false and misleading statements are entitled to First Amendment protection in the political realm, *see, e.g., Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the special character of commercial expression justifies restrictions on misleading speech that would not be tolerated elsewhere."); *Hustler Magazine*, 485 U.S. at 52, 108 S.Ct. at 880 (there is no "strict liability" for false factual assertions by a publisher, because such a rule "would have an undoubted 'chilling' effect on speech relating to public figures that does have constitutional value"; therefore, " '[f]reedoms of expression require "breathing space," ' " quoting *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 772, 106 S.Ct. 1558, 1561, 89 L.Ed.2d 783 (1986), in turn quoting *Sullivan*, 376 U.S. at 272, 84 S.Ct. at 721). *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 757, 105 S.Ct. 2939, 2944, 86 L.Ed.2d 593 (1985) (*Gertz* did not decide what balance is required when no issue of public concern is involved; however, the Court concluded that "we must employ the approach approved in *Gertz* and balance the State's interest in compensating private individuals for injury to their reputation against the First Amendment interest in protecting this type of expression."); *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 67 n. 26, 96 S.Ct. 2440, 2451 n. 26, 49 L.Ed.2d 310 (1976) ("The mere fact that an alleged defamatory statement is false does not, of course, place it completely beyond the protection of the First Amendment. 'The First Amendment requires that we protect some falsehood in order to protect speech that matters,' " quoting *Gertz*, 418 U.S. at 341, 94 S.Ct. at 3007), *Gertz*, 418 U.S. at 339–41, 94 S.Ct. at 3006–08 ("Although the erroneous statement of fact is not worthy of constitutional protection, it is nevertheless inevitable in free debate"; thus, "[t]he First Amendment requires that we protect some falsehood in order to protect speech that matters."); *Price*, 881 F.2d at 1433 ("Where core values of the first amendment are implicated, even some false statements of fact must be protected"; the court recognized that "robust" political debate requires some protection from the consequences of false statements, in part because statements in political debate are "more likely to be understood as opinion," and, "[a]s a practical matter, every opinion involves implied or asserted facts."); *see also Johnson v. Multnomah County, Or.*, 48 F.3d 420, 422 (9th Cir.1995) (recklessly false statements by a public employee are not *per se* unprotected by the

First Amendment when they substantially relate to matters of public concern), *cert. denied*, —— U.S. ——, 115 S.Ct. 2616, 132 L.Ed.2d 858 (1995); *Moldea v. New York Times Co.*, 15 F.3d 1137, 1142–45 (D.C.Cir.) (providing an extensive discussion of the extent of constitutional protections for false statements, in light of *Milkovich*, to determine the constitutional "breathing space" required for free expression), *modified on other grounds*, 22 F.3d 310 (D.C.Cir.), *and cert. denied*, —— U.S. ——, 115 S.Ct. 202, 130 L.Ed.2d 133 (1994); *Snead*, 998 F.2d at 1333 (although false statements are " 'not worthy of constitutional protection,' " quoting *Gertz*, "the Court has recognized that punishment of libel runs the risk of chilling the exercise of the rights of free speech and press"; therefore, constitutional jurisprudence is involved in a " 'continuing effort to define the proper accommodation between these competing concerns,' " again quoting *Gertz*); *American Library Ass'n v. Barr*, 956 F.2d 1178, 1193 (D.C.Cir.1992) (reading *Babbitt v. United Farm Workers*, 442 U.S. 289, 301, 99 S.Ct. 2301, 2310, 60 L.Ed.2d 895 (1979), and *Sullivan*, 376 U.S. at 279, 84 S.Ct. at 725–26, as holding that "some false speech must be tolerated to avoid the suppression of 'speech that matters.' "); *Gossman v. Allen*, 950 F.2d 338, 342 (6th Cir.1991) (public employees lose protection of First Amendment for comments on matters of public concern when false statements are "knowingly and recklessly made," and the right must be balanced against the interest of the public employer in efficient provision of services to the public, citing *Pickering* ); *Pestrak v. Ohio Elections Comm'n*, 926 F.2d 573, 578 (6th Cir.) (statute imposing fines for false campaign statements violated the First Amendment, because it failed to require clear and convincing evidence of falsity), *cert. dismissed*, 502 U.S. 1022, 112 S.Ct. 672, 116 L.Ed.2d 763 (1991).

A recent district court decision rejected a prisoner's lawsuit founded on violation of his First Amendment right to "free speech" as the result of discipline imposed for statements made in a grievance, rejecting any heightened requirements comparable to those imposed in public media defamation cases by the Supreme Court's decision in *Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686. In *Curry v. Hall*, 839 F.Supp. 1437 (D.Or.1993), the district court considered imposition of discipline for statements made in a grievance pursuant to a prison regulation that described the offense of "false information to employees" as being committed when a prisoner "presents or causes the presentation of false and misleading information to employees. False or misleading information includes gestures, and auditory and/or written communication." *Curry*, 839 F.Supp. at 1439. The court concluded first that there was no First Amendment protection for false statements. *Id.* at 1441 (citing *Milkovich*, 497 U.S. at 18, 110 S.Ct. at 2705–06; *Hustler Magazine, Inc.*, 485 U.S. at 52, 108 S.Ct. at 880; *Virginia State Bd. of Pharmacy*, 425 U.S. at 771, 96 S.Ct. at 1830; *Garrison v. Louisiana*, 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964), *overruled on other grounds by Curtis Pub. Co. v. Butts*, 388 U.S. 130, 134, 87 S.Ct. 1975, 1980–81, 18 L.Ed.2d 1094 (1967)). The court also rejected the prisoner's attempt to inject the *Sullivan*, 376 U.S. at 254, 84 S.Ct. at 710, standard of "actual malice" applicable to a case involving a media defendant or a public official or public figure plaintiff and a topic involving public concern. *Id.* The district court concluded that "[a] claim under [the Oregon "false information" prison regulation] is not analogous to a claim for defamation in which a public official or media defendant is involved. The communication of false statements to prison employees by inmates does not occur in the media context, and such a communication is not a topic of public debate." *Id.* The district court rejected any special First Amendment status to the prisoner's speech simply because it was couched in a prison grievance:

> The fact that a false statement is included in a grievance does not give the false statement a special First Amendment status, transforming the statement into protected speech. No constitutional right is implicated in the enforcement of [the prison's "false information" regulation] because false statements are not generally protected by the First Amendment. Therefore, the *Turner* test does not apply in this case.

*Curry,* 839 F.Supp. at 1441. To put it another way, what the district court in *Curry* found was that "the threshold of an infringement upon constitutional rights" had never been crossed, *Taylor,* 29 F.3d at 40; consequently, the trigger for analysis of impingement of constitutional rights in the prison context mandated by *Turner v. Safley,* 482 U.S. at 89, 107 S.Ct. at 2261–62, was never tripped.

This court also finds that the trigger for a *Turner* analysis of impingement of "free speech" rights has never been tripped here, as the "the threshold of an infringement upon constitutional rights" has never been crossed. *Taylor,* 29 F.3d at 40. The plaintiffs in this case do not appear to be making, even with the liberal construction the court has thus far afforded their allegations, a direct challenge to the constitutionality of the "false statement" or "defamation" rules of the IMR as improperly impinging upon their First Amendment "free speech" rights, and the court doubts that they could. *See Leonard v. Nix,* 55 F.3d 370, 373–74 (prisoners may be punished for abusive, scurrilous, or "hate" speech despite protections of the First Amendment, citing *Goff v. Dailey,* 991 F.2d 1437, 1439 (8th Cir.), *cert. denied,* 510 U.S. 997, 114 S.Ct. 564, 126 L.Ed.2d 464 (1993), and *R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 385–86, 112 S.Ct. 2538, 2544, 120 L.Ed.2d 305 (1992)).[14] Rather, they appear to claim that punishment for "false statements" or "defamatory" comments *made in grievances* violates or chills First Amendment rights, specifically, the First Amendment right to petition for redress of grievances. The court will therefore consider in its "right to petition" analysis whether "false" or "defamatory" statements in the context of a prison grievance invoke heightened standards for imposition of discipline in order to protect the right to petition, as opposed to the right of "free speech."

Furthermore, any First Amendment "free speech" claim asserting "retaliation" as the nature of the violation cannot survive under the circumstances presented on this summary judgment record in light of controlling precedent of the Eighth Circuit Court of Appeals. A "retaliation" claim is precluded where the allegedly retaliatory punishment was imposed against the prisoner on the basis of an actual violation of prison rules. *Earnest v. Courtney,* 64 F.3d 365, 367 (8th Cir.1995) (retaliation claim, asserting retaliation for filing a grievance, failed where the punishment imposed was for an actual violation of prison rules against gambling); *Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995); *Goff,* 7 F.3d at 738. The filing of a disciplinary report is only actionable under 42 U.S.C. § 1983 if the disciplinary report is in fact false and was also retaliatory. *Dixon v. Brown,* 38 F.3d 379, 379 (8th Cir.1994) (a false disciplinary report filed in retaliation for filing a grievance was actionable even though filing of a false disciplinary charge is not actionable in and of itself). In this case, each of the prisoners actually disciplined was disciplined for a finding of an actual rules violation, albeit a violation of either the "false statements" or "defamation" rule, or both, in a grievance. The Eighth Circuit Court of Appeals has denied relief on retaliation claims where there was "some evidence" to support the finding of the rules violation on the charge alleged to be retaliatory. *Earnest,* 64 F.3d at 367; *Henderson,* 29 F.3d at 469 (a finding based on "some evidence" of a rule violation "essentially checkmates [the prisoner's] retaliation claim"). Each of the findings of guilt here is supported by "some evidence" identified in the rulings on the

---

14. The court's doubts are deepened by the fact that, as the Ninth Circuit Court of Appeals has observed, "The constitutionality of statutes criminally forbidding false statements has been upheld on numerous occasions." *United States v. Barker,* 942 F.2d 585, 589 n. 9 (9th Cir.1991), *amended and superseded on other grounds on denial of reh'g,* 967 F.2d 1275 (9th Cir.1991). Such statutes criminally forbidding false statements include penalties for perjury and for false statements in various kinds of applications for government assistance or benefits or in tax returns. The court observes, however, that, with the exception of the rule at issue in *Curry* in a prison context, it has found no "strict liability" offenses, punishing false statements without regard to scienter. Other than the rule in *Curry,* which states no scienter requirement, outside and inside of the prison context, the court has found only offenses requiring at least "knowingly" making false statements, which is all that the IMR rules penalize.

disciplinary reports. Thus, the "free speech" retaliation claims of the "new" plaintiffs are futile, and therefore frivolous, and must be stricken from the Second Class Action Complaint even should other claims survive. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Fuller,* 30 F.3d at 88; *Williams,* 21 F.3d at 225; *Costello, Porter, Hill, Heisterkamp & Bushnell,* 958 F.2d at 839; *Thompson–El,* 876 F.2d at 67; *Sanders,* 823 F.2d at 216; *Standard Title,* 349 F.2d at 622; *see also* 28 U.S.C. § 1915(d) (providing for dismissal of "frivolous" claims of *in forma pauperis* litigants). Plainly, in light of this failing of such claims as a matter of law, plaintiffs are not entitled to summary judgment on any "free speech" claims either. *Fed.R.Civ.P.* 56(c); *see also Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Reliance Ins. Co.,* 81 F.3d at 790; *Beyerbach,* 49 F.3d at 1325.[15]

The court reiterates, however, that whether or not the "free speech" retaliation claim is viable, and the court concludes that it is not, is separate from the question of whether the retaliation violated the First Amendment by improperly "chilling" the right of petition. Consequently, it is also separate from the question of whether additional proofs necessary to make imposition of liability for "false" or "defamatory" statements employed in other "free speech"/defamation contexts are necessary here to protect the right of petition.

### 6. *"Right of petition" claims*

As the court has construed plaintiffs' Second Class Action Complaint, it states two kinds of claims based on the First Amendment right to petition the government for redress of grievances. First, the court construes the complaint to assert First Amendment "right of petition" or "access to the courts" claims based on disciplinary actions for *filing* grievances (another kind of retaliation claim). Second, the court construes the complaint to assert First Amendment "right of petition" or "access to the courts" claims based on discipline for *statements in* grievances (chilling or burdening rights to petition the government). However, the Second

Class Action Complaint does not clearly differentiate between these two kinds of claims. *See* Second Class Action Complaint, ¶¶ 1 (alleging violation of the plaintiffs' "First Amendment right to free speech and to petition the government"), 14 (alleging members of a class "have been, are and will be subjected to violations of the rights of petition and due process"), 50 (identifying the cause of action of the class as "violat[ions of] prisoners' first amendment right to petition the government for redress of grievances"), and prayer subdivisions (c) (seeking injunctive relief prohibiting the disciplining of inmates "for statements made in grievances"). Although plaintiffs' brief indicates that they conceive of any "right of petition" claim primarily as a "retaliation" claim, they, and defendants, have both considered the "chilling" of the right of petition as the result of defendants' conduct. Although defendants' reference to "chilling" may have been an effort to defend against a poorly defined "right of petition" claim, the court finds that both "retaliation" and "chilling" claims are at issue in this lawsuit. Such a conclusion matters, because the court finds that only the second kind of right of petition claim is viable here.

#### a. *"Retaliation" for exercise of the right of petition*

The fatal flaw in the plaintiffs' "free speech" retaliation claims is equally apparent in their "right of petition" retaliation claims. A "retaliation" claim is precluded where the allegedly retaliatory punishment was imposed against the prisoner on the basis of an actual violation of prison rules. *Earnest,* 64 F.3d at 367; *Henderson,* 29 F.3d at 469; *Goff,* 7 F.3d at 738. Whether the alleged retaliation here was for exercise of "free speech" rights or exercise of "petition" rights, the record demonstrates that there was "some evidence" to support the finding of the rules violations alleged to be retaliatory in this case. *Earnest,* 64 F.3d at 367; *Henderson,* 29 F.3d at 469. The court finds that the proper basis for a viable claim, in light of Eighth Circuit Court of Appeals pre-

---

15. Because plaintiff Hancock's "free speech" claims, if any, are similarly futile, the court anticipates that Mr. Hancock will voluntarily withdraw such claims or that defendants will swiftly file their own motion for summary judgment on such claims.

cedent narrowly construing the nature of successful retaliation claims, is the "chilling" of rights.

Plaintiffs' right of petition "retaliation" claims are futile, and therefore frivolous, and must be stricken from the Second Class Action Complaint even if their "chilling" claims survive. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Fuller,* 30 F.3d at 88; *Williams,* 21 F.3d at 225; *Costello, Porter, Hill, Heisterkamp & Bushnell,* 958 F.2d at 839; *Thompson–El,* 876 F.2d at 67; *Sanders,* 823 F.2d at 216; *Standard Title,* 349 F.2d at 622; *see also* 28 U.S.C. § 1915(d) (providing for dismissal of "frivolous" claims of *in forma pauperis* litigants). Plainly, in light of this failing of such claims as a matter of law, plaintiffs are not entitled to summary judgment on any "right of petition" retaliation claims either. *Fed.R.Civ.P.* 56(c); *see also Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Reliance Ins. Co.,* 81 F.3d at 790; *Beyerbach,* 49 F.3d at 1325.[16]

### b. *"Chilling" of the right of petition*

Discussion of the viability of a claim of "chilling" of the right of petition begins with discussion of the two decisions of the Eighth Circuit Court of Appeals upon which the parties principally rely. In *Sprouse v. Babcock,* 870 F.2d 450 (8th Cir.1989), the plaintiffs' principal case, a former prisoner in the Iowa State Penitentiary (ISP), then incarcerated in Missouri, brought a 42 U.S.C. § 1983 action against three ISP officials for damages, claiming that his constitutional rights had been violated when one of the officials deliberately filed false disciplinary charges against him in retaliation for filing a grievance against that official. *Sprouse,* 870 F.2d at 451. The allegedly false disciplinary charges were for making false statements about the official in the prisoner's grievance. *Id.* The district court held that defendants were entitled to summary judgment, whether or not the disciplinary charge was false, because the district court held that there was no constitutional guarantee of a prisoner grievance procedure. *Id.* at 452. The

Eighth Circuit Court of Appeals first cited with approval the conclusion of another appellate court that " 'intentional obstruction of a prisoner's right to seek redress of grievances' is the type of conduct section 1983 is intended to remedy," and further holding that "a prisoner 'should not be any less entitled to relief under section 1983 because he was addressing his complaints to a state administrative agency rather than to a court of law.' " *Id.* (quoting *Franco v. Kelly,* 854 F.2d 584, 589–90 (2d Cir.1988)). In reversing the district court's decision, the Eighth Circuit Court of Appeals concluded as follows:

> Based on this line of authority, and upon our reading of the Constitution, we hold that the filing of a disciplinary charge against Sprouse, although otherwise not actionable under section 1983, is actionable under section 1983 if done in retaliation for his having filed a grievance pursuant to established procedures. Prison officials cannot properly bring a disciplinary action against a prisoner for filing a grievance that is determined by those officials to be without merit any more than they can properly bring a disciplinary action against a prisoner for filing a lawsuit that is judicially determined to be without merit. That the Constitution does not obligate the state to establish a grievance procedure is, we believe, of no consequence here, since what is at stake is a prisoner's right of access to an existing grievance procedure without fear of being subjected to a retaliatory disciplinary action. As a purely practical matter, we observe that if such disciplinary actions were allowed, the purpose of the grievance procedure—to provide an administrative forum for the airing of prisoner complaints—would be defeated. At the same time, prisoners must understand that if they abuse the system by repeatedly filing ill-founded grievances, reasonable limitations may be placed on their access to the procedure, just as reasonable limitations may be placed on prisoners' access to the courts when they abuse the judicial

16. Because plaintiff Hancock's right of petition "retaliation" claims, if any, are similarly futile, the court anticipates that Mr. Hancock will voluntarily withdraw such claims or that defendants will swiftly file their own motion for summary judgment on such claims.

process by repeatedly filing frivolous claims.

*Id.*

Defendants argue that a later decision of the Eighth Circuit Court of Appeals in *Orebaugh v. Caspari,* 910 F.2d 526 (8th Cir. 1990), narrows or clarifies the *Sprouse* court's apparently broad holding that any disciplinary action taken in retaliation for filing of a grievance violates a prisoner's right to petition the government for redress. In *Orebaugh,* the prisoner alleged that disciplinary actions for playing softball while under "light duty" orders and for "scuffling" with another inmate were taken in retaliation for his filing and pursuing a grievance for confiscation and destruction of items he had purchased from the prison canteen. *Orebaugh,* 910 F.2d at 527–28. Although the district court had not reached this claim, the Eighth Circuit Court of Appeals concluded that it could dispose of it on the basis of the record upholding disciplinary actions for scuffling and playing softball:

> We held in *Sprouse v. Babcock,* 870 F.2d 450 (8th Cir.1989), that otherwise proper acts are actionable under § 1983 if done in retaliation for filing a grievance pursuant to established prison procedures. *Id.* at 452. However, crucial to our holding in *Sprouse* was that the prisoner alleged that *false* disciplinary reports were filed against him in retaliation for his filing a grievance. *Id.* ("Sprouse's claims *based on the falsity of the charges* and the impropriety of [his counselor's] involvement in the grievance procedure, standing alone, do not state constitutional claims. Here, however, these claims were linked to a retaliation claim.") (emphasis added) (citations omitted); *see also Franco v. Kelly,* 854 F.2d 584, 585, 589 (2d Cir.1988) (holding of retaliation based in part upon falsity of charges).

In this case, the disciplinary reports were true as found by the prison administration. Orebaugh admitted that he *did* play softball. Playing softball *did* constitute a violation of his light-duty orders. He *did* have canteen items in excess of regulations, and he *did* scuffle with another inmate. While a prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations, no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform. Any other rule would allow a prisoner to openly flout prison rules after filing a grievance and then bring a claim under section 1983 arguing that prison officials disciplined him in retaliation for his filing a grievance.

*Orebaugh,* 910 F.2d at 528 (emphasis in the original).

As an initial matter, the court observes that even before *Sprouse* and consistently since that time, the Eighth Circuit Court of Appeals has recognized that false disciplinary charges only become actionable when there is a further allegation that the false disciplinary charges were made in retaliation for the exercise of some other constitutional right. *See Sprouse,* 870 F.2d at 452 (claim of falsity of the charges "standing alone" did not state constitutional claims, but "these claims were linked to a retaliation claim"); *see also Dixon,* 38 F.3d at 379 (restating the rule recognized in *Sprouse* that a false disciplinary report filed in retaliation for filing a grievance was actionable even though filing of a false disciplinary charge is not actionable in and of itself). Furthermore, the court observes that the Eighth Circuit Court of Appeals has consistently embraced the rule stated in *Orebaugh* that a prisoner cannot state a retaliation claim when the alleged retaliation arose from discipline imposed upon the prisoner for conduct the prisoner was not entitled to perform. *Orebaugh,* 910 F.2d at 528 ("no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform."); *see also Earnest,* 64 F.3d at 367 (no retaliation claim can be stated when discipline is imposed for an actual rules violation); *Henderson,* 29 F.3d at 469 (same); *Goff,* 7 F.3d at 738 (same). Thus, whether or not the falsity of the allegedly retaliatory charges was "crucial" to the holding in *Sprouse,* what is crucial to a retaliation charge under prevailing precedent is that the allegedly retaliatory discipline not be imposed for an actual rules violation. Here, an

actual rules violation has been found for each of the prisoners actually disciplined for the content of their grievances. For this reason, the court reiterates its conclusion that plaintiffs here cannot mount a "retaliation" claim, even though such a claim might be supported by the decision in *Sprouse*.

However, the language of the decision in *Sprouse* does suggest that what concerned the Eighth Circuit Court of Appeals was the chilling effect on a prisoner's right of petition if a prisoner could be disciplined for filing a grievance determined by the grievance officers to be without merit. *Sprouse*, 870 F.2d at 452. ("Prison officials cannot properly bring a disciplinary action against a prisoner for filing a grievance that is determined by those officials to be without merit any more than they can properly bring a disciplinary action against a prisoner for filing a lawsuit that is judicially determined to be without merit," and "what is at stake is a prisoner's right of access to an existing grievance procedure without fear of being subjected to a retaliatory disciplinary action. As a purely practical matter, we observe that if such disciplinary actions were allowed, the purpose of the grievance procedure—to provide an administrative forum for the airing of prisoner complaints—would be defeated."). The question here is whether an unconstitutional "chill" on the right to petition occurred in this case, even though the plaintiffs were disciplined for actual rules violations. This court finds it must look at decisions of this circuit's court of appeals, as well as decisions from courts of other circuits, to answer that question.

**i. A prisoner's right of petition.** A citizen's right of access to the courts cannot be impaired, either directly or indirectly. *See, e.g., In re Workers' Compensation Refund*, 46 F.3d 813, 822 (8th Cir.1995). Although a prisoner's First Amendment rights are narrower than a citizen's, prisoners nonetheless retain certain First Amendment rights, among them the rights of access to the courts and the right otherwise to petition the government for redress of griev-

ances. *Pell*, 417 U.S. at 822, 94 S.Ct. at 2804 (although lawful incarceration brings about limitations on privileges and rights, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."); *Hudson*, 468 U.S. at 523, 104 S.Ct. at 3198 (quoting *Pell*); *Leonard*, 55 F.3d at 374 (quoting *Pell*). The First Amendment grants prisoners a limited right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821–33, 97 S.Ct. 1491, 1494–1501, 52 L.Ed.2d 72 (1977). As the Supreme Court very recently clarified, that limited right of access to the courts is a right to " 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.' " *Lewis v. Casey*, —— U.S. ——, ——, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996) (quoting *Bounds*, 430 U.S. at 825, 97 S.Ct. at 1496). Thus, the state may not burden this right, however limited, with practices that are not reasonably related to legitimate penological objectives, nor act with the intent of chilling that First Amendment right. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir.1995). The right of meaningful access to the courts extends to established prison grievance procedures. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir.1995); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir.1989). Thus, "[a] prisoner's right to meaningful access to the courts, along with the broader right to petition the government for redress of grievances under the First Amendment, precludes prison authorities from penalizing a prisoner for exercising those rights." *Bradley*, 64 F.3d at 1279.

**ii. Decisions addressing discipline for "false" statements in grievances.** A few courts have considered whether false or defamatory statements that violated prison rules comparable to the IMR's made in prisoner grievances could be sanctioned without violating the prisoner's First Amendment right of petition or access to the courts. In the seminal decision in this regard, *Wolfel v. Bates*, 707 F.2d 932 (6th Cir.1983),[17] the

---

17. For example, the Eighth Circuit Court of Appeals relied, in part, on *Wolfel*, in *Sprouse*, citing it for the proposition that a prisoner's right to

seek redress of grievances is violated where the prisoner is given a disciplinary infraction in re-

Sixth Circuit Court of Appeals considered a case in which a prisoner who had submitted to prison officials a petition signed by seventeen fellow inmates was issued a "rules infraction ticket" for violating a rule that prohibits inmates from "making unfounded complaints or charges against staff members of the institution with malicious intent." *Wolfel,* 707 F.2d at 933. The court held as follows:

> In the present case, . . . the record reveals that prison authorities punished [the inmate] without first finding: (1) that the statements contained in his petition were false, or (2) that the statements were "maliciously" communicated. In the absence of such findings, [the inmate] was, in effect, subjected to discipline merely because he complained. This was an impermissible abridgement of his right to seek redress of grievances. Nowhere do we find authority for the proposition that prison administrators have an overriding interest in the *indiscriminate* suppression of peacefully communicated inmate complaints.

*Wolfel,* 707 F.2d at 934 (emphasis in the original; internal citations omitted). The court also rejected the prison officials' assertion of qualified immunity, on the basis of the principles established in *Pell,* 417 U.S. at 817, 94 S.Ct. at 2801–02, and a prior decision of the district court for the Northern District of Ohio, which had forbidden the Ohio Department of Rehabilitation and Correction to initiate disciplinary proceedings merely because an inmate could not substantiate a grievance. *Id.*

More recently, in *Bradley v. Hall,* 64 F.3d 1276 (9th Cir.1995), the Ninth Circuit Court of Appeals was confronted with a question similar to that confronting the court here.[18] A prisoner was subjected to discipline by prison authorities for statements in a written grievance under several Oregon prison rules that forbade "disrespectful" language. *Bradley,* 64 F.3d at 1278. The prison officials argued that the disrespect rules did not hinder a prisoner from filing a grievance; instead, the rules merely forbade using inap-

propriate language in grievances. *Id.* at 1279. The district court ruled that "[p]unishing an inmate for the content of his grievance rather than for the act of filing the grievance is a distinction without a difference." *Id.* The court of appeals concurred, finding that:

> From the prisoner's point of view, the chilling effect is the same. Whether the content of the grievance or the act of filing the grievance is deemed to be the actus reus of the offense, the prisoner risks punishment for exercising the right to complain. Without question, the application of the ODOC disrespect regulations to [the prisoner's] written grievance impacts his constitutionally protected rights under the Fourteenth and First Amendments.

*Bradley,* 64 F.3d at 1279. The court therefore conducted an evaluation of the "disrespect" rules to determine whether they were "reasonably related to legitimate penological interests," pursuant to *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987), despite impingement of the rules on the prisoner's constitutional rights. *Id.* Although the court found that the disrespect rules served legitimate penological interests, including helping prison staff display a high degree of self-control necessary in the corrections profession by preventing inmates from goading or baiting guards into unprofessional conduct, the "disrespect" rules placed an unconstitutional burden on the prisoner's fundamental right of access to the courts. *Id.* at 1280–81. The court rejected an argument that disrespectful language in any forum at any time would result in a total breakdown of prison security and discipline, citing *Loggins v. Delo,* 999 F.2d 364, 367 (8th Cir.1993), which the *Bradley* court characterized as holding that disrespectful language in outgoing mail did not implicate prison security. *Bradley,* 64 F.3d at 1281. The court found that "[i]t takes little imagination to structure a grievance system and regime of disrespect rules that would make a prisoner's statement in a complaint or grievance invisible to all those involved in the daily opera-

---

taliation for filing grievances. *Sprouse,* 870 F.2d at 452.

**18.** The able analysis of the district court below in *Bradley v. Hall,* 911 F.Supp. 446 (D.Or.1994), provided a solid framework upon which the court of appeals could build.

tions of the prison, alleviating any security concerns." *Id.* The court therefore concluded that application of the disrespect rules to the content of a prisoner's written grievance "'represents an exaggerated response.'" *Id.* (quoting *Turner*, 482 U.S. at 89–90, 107 S.Ct. at 2266). Although the court left open the question of whether criminal threats contained in a grievance could be the basis for discipline, the court held that "prison officials may not punish an inmate merely for using 'hostile, sexual, abusive or threatening' language in a written grievance." *Id.* at 1282.

A different conclusion about the "chilling" effect on a prisoner's right of petition as the result of imposing discipline for false statements in grievances was reached by a district court, also considering Oregon prison regulations, just two years earlier than the court of appeals decision in *Bradley.* In *Curry,* 839 F.Supp. at 1441,[19] the court rejected any application of the "actual malice" standard from *Sullivan,* 376 U.S. at 254, 84 S.Ct. at 710, to a prisoner grievance case, concluding that "no First Amendment right is implicated by the sanction provided in" the Oregon prison rule prohibiting false statements. *Curry,* 839 F.Supp. at 1441. Although the court found that a *Turner* analysis was not required in the absence of an impingement upon "free speech" rights, the court nonetheless considered the prisoner's arguments for a constitutional violation of the right of petition under the *Turner* analysis:

> If the court was to accept Curry's analogy to defamation in a public debate/media context, a First Amendment right might be implicated by the omission of an actual malice standard in [the prison regulation] triggering the *Turner* analysis. However, Curry would not survive scrutiny, even if the *Turner* test was applied. . . .

> The crux of Curry's arguments regarding the *Turner* test is whether the government has a legitimate interest in suppressing the grievances of prisoners. However, these arguments are not consistent with the allegations and relief requested in Curry's amended complaint. Curry challenges the constitutionality of [the prison regulation] arguing that it is overbroad because

it "has a chilling effect upon the right of the members of the class to petition for redress of their grievances." Second Amended Complaint, p. 5. Thus, the question under the *Turner* test is not what penological interest is served by suppressing the grievances of prisoners in general, but what penological interest is served by the sanctions provided in [the prison regulation] when prisoners make false statements to prison officials in grievances.

*Curry,* 839 F.Supp. at 1441. The district court found that the government's legitimate interest outweighed the prisoner's interest in his right of petition:

> The government has an unmistakable interest in preserving safety and order in the prison system. False statements made by inmates to prison guards significantly impede those interests. If prison officials allowed inmates the unsanctioned right to provide false statements to guards or to prison officials, even in the context of grievances, the stability and safety of the prison system would be threatened. [The prison regulation in question] does not preclude prisoners from making false statements to non-prison employees. The balance of interests under *Turner* favors the validity of [the prison's "false information" regulation].

*Curry,* 839 F.Supp. at 1441–42. The court therefore granted the defendants' motion for judgment on the pleadings and dismissed the plaintiff's motion for class certification as moot. *Id.* at 1442.

A few courts to confront similar situations have upheld imposition of discipline on prisoners for statements made in grievances, but the court finds that in these cases, the courts either avoided the constitutional question of whether the discipline "chilled" a First Amendment right, or found that no constitutional right was impinged. Shortly after the decision of the Sixth Circuit Court of Appeals decision in *Wolfel,* the Third Circuit Court of Appeals handed down a decision in *Hadden v. Howard,* 713 F.2d 1003 (3d Cir.1983), which is of the first kind, because the court never considered the question of whether the

---

**19.** The *Curry* decision was also discussed above in the analysis of "free speech" claims.

discipline unconstitutionally impinged upon First Amendment protections. In *Hadden,* an inmate was disciplined for making, in a prison grievance, "unfounded, slanderous and derogatory statements about [prison] personnel" in violation of a Pennsylvania prison rule that prohibited, *inter alia,* "lying to an employee" and "insolence or disrespect toward a staff member." *Hadden,* 713 F.2d at 1005. The prisoner had alleged that a prison guard had forced him to engage in homosexual acts. *Id.* The court's analysis of the case was cast in terms of due process and the reasonableness of the commissioner's interpretation of a rule, upon which the inmate relied, rather than in terms of First Amendment protections for free speech or rights of petition. *Id.* The inmate relied on a prison rule, 37 Pa.Code § 95.131(c), which the inmate asserted prohibited disciplinary action based on the substance of a complaint as well as the act of filing a complaint. *Id.* However, the commissioner of prisons interpreted the rule as not precluding liability for charges made against an officer which were subsequently found to be "maliciously untrue." *Id.* at 1006. The court's analysis of the parties' arguments was as follows:

> Section 95.131(c) is designed to encourage inmate use of the Complaint Review System by assuring prisoners that filing a complaint will not result in disciplinary reprisals. An interpretation of Section 95.131(c) that would frighten or chill prisoners from filing complaints would be inconsistent with that provision. For example, it would not appear to be a reasonable interpretation to say that the regulation protects the physical act of filing, but affords no protection for harmless or inadvertent errors in the statement of the complaint, since a penalty for honest mistakes would have a substantial chilling effect. That, however, is not the situation presented in this case. Under the Commissioner's interpretation of the regulation, only "maliciously untrue" statements are punishable; inmates are immune from discipline for any other type of statement.

*Hadden,* 713 F.2d at 1007. The court further concluded that any vagueness about the "maliciously untrue" requirement was clarified by the conduct the disciplinary tribunal held was unprotected by the rule cited by the prisoner, which involved "lying in a deliberate attempt to degrade the character of [the guard]." *Id.* Although the *Hadden* opinion demonstrates that the Third Circuit Court of Appeals was concerned about the chilling effect of the regulation on the prisoner's ability to file grievances, the court never was required to address the "chill" in terms of the First Amendment right of petition or a balance of interests pursuant to *Turner v. Safley.*

The remaining cases the court has located that consider prison discipline for false or defamatory statements in prison grievances are unpublished. These decisions, like *Hadden,* either avoided the constitutional question of whether the discipline "chilled" a First Amendment right, or found that no constitutional right was impinged. *See Johnson v. Mandenberg,* 893 F.2d 1334 (Table decision), 1990 WL 3815 (full text) (6th Cir. 1990) (the district court rejected the magistrate's finding that *Wolfel,* 707 F.2d at 932, required a finding of "malice" before a false statement made in a signed statement accompanying another prisoner's grievance, and punished under prison rules forbidding false statements, could meet First Amendment standards; the court of appeals upheld the district court's grant of summary judgment in favor of defendants, but because there was no suggestion that the inmate had sued any of the defendants in their individual capacities, so that his § 1983 action for damages would not lie; the constitutional question was never reached); *Hamilton v. Lawson,* 1995 WL 761272 (N.D.Cal.1995) (finding no constitutional violation in punishment of inmate for "false" or "slanderous" statements in a grievance, in violation of prison rules, because *Bradley,* 64 F.3d at 1280, was inapposite: the prisoner in question in the case before the court had been punished for "more than a mere 'impolitic choice of words,'" *Bradley,* 64 F.3d at 1281, but instead for statements expressly alleging a particular theft and ongoing unlawful conduct which the prisoner was unable to substantiate; the prisoner also failed to demonstrate retaliatory intent for the discipline; the district court also rejected any applicability of

*Wolfel,* 707 F.2d at 933, on the ground that the prisoner had been afforded a full opportunity to substantiate his claims and could not, or *Sprouse,* 870 F.2d at 451, on the ground that *Sprouse* involved matters within the sphere of the prisoner's knowledge, but the prisoner in this case had no reason to believe his own allegations and could not support them); *Benitez v. Schlaggel,* 1995 WL 581716 (S.D.N.Y.1995) (prisoner was disciplined for making a false statement in an oral complaint to a prison officer that another officer had struck him, but the false statement charge was dismissed and the penalty for misconduct modified to eliminate the portion of the penalty imposed for false statements; the court found that the prisoner had not been punished simply for complaining, as in *Wolfel,* but had instead enjoyed sufficient scrutiny by prison officials to prevent a chilling of his First Amendment right of petition, because prison officials withdrew any punishment for "false statements"). This small body of decisions on point, published and unpublished, does not point definitively in any direction for the disposition of these prisoners' claims of unconstitutional chilling of their right of petition.

■ *iii. Is there an unconstitutional "chill" in this case?* Finding but little guidance from other decisions, the court must perforce make its own analysis of the question of whether meting out prison discipline for "false" or "defamatory" statements in prison grievances unconstitutionally chills a prisoner's First Amendment right of petition. Just as there is no constitutional protection *per se* for "false statements," there is no constitutional protection *per se* for false or frivolous lawsuits or complaints. *See, e.g.,* 28 U.S.C. § 1915 (court may refuse to allow the filing of frivolous lawsuits *in forma pauperis* ); *Austin v. United States,* —— U.S. ——, ——, 115 S.Ct. 380, 381, 115 S.Ct. 380, 130 L.Ed.2d 219 (1994) (per curiam) (court of appeals must allow court-appointed counsel to refuse to file frivolous petitions for certiorari); *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 743, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277 (1983) ("Just as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the

First Amendment right to petition."); *Sterling v. Wood,* 68 F.3d 1124, 1126 (8th Cir. 1995) (the right of prisoners to access to the courts under *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977), does not mean that there is a constitutional right to file frivolous lawsuits: " '[T]here is "no constitutional right of access to the courts to prosecute an action that is frivolous or malicious," ' " quoting *In re Tyler,* 839 F.2d 1290, 1292 (8th Cir.1988) (per curiam), in turn quoting *Phillips v. Carey,* 638 F.2d 207, 208 (10th Cir.), *cert. denied,* 450 U.S. 985, 101 S.Ct. 1524, 67 L.Ed.2d 821 (1981)); *Wright v. DeArmond,* 977 F.2d 339, 348 (7th Cir.1992) (quoting *Bill Johnson's Restaurants,* 461 U.S. at 743, 103 S.Ct. at 2170, and concluding that the right of petition is not absolute), *cert. denied,* 507 U.S. 1051, 113 S.Ct. 1945, 123 L.Ed.2d 651 (1993); *United States v. Barker,* 942 F.2d 585, 589 (9th Cir.) ("There is simply no constitutional right to file a false claim."), *amended and superseded on other grounds on denial of reh'g,* 967 F.2d 1275 (9th Cir.1991). Thus, it would seem at first blush that there can be no showing that "the threshold of an infringement upon constitutional rights" has been crossed. *Taylor,* 29 F.3d at 40.

■ However, the court finds that when the right to petition is in question, there is also a heightening of requirements to show falsity or frivolousness of complaints, similar to that observed in the "free speech" realm, in order to prevent a chill on the filing of meritorious claims. *See, e.g., Sterling,* 68 F.3d at 1126 (claim must be shown to be frivolous or malicious, not simply based on false allegations); *Barker,* 942 F.2d at 589 (the rule stated in 18 U.S.C. § 287 that a person may not present false, fictitious, or fraudulent claims to the United States "poses no conflict with the constitutional right legitimately to petition the government for the redress of grievances," because it requires that the claimant file the claims with *knowledge* that they were false, not merely that the claimant filed the claim determined by a trier of fact to be false). The court finds instructive the limitations found in various statutes for imposition of sanctions for unfounded claims that require a showing of bad faith or

groundless or frivolous claims before the sanctions can be imposed. *See, e.g., Wyatt v. City of Boston*, 35 F.3d 13, 15 (1st Cir.1994) (nothing in the "participation" clause of Title VII " 'requir[es] that the charges be valid, nor even an implied requirement that they be reasonable,' " quoting 3 Arthur Larson & Lex K. Larson, *Employment Discrimination* § 87.12(b), at 17–95 (1994), and cases so holding, and a claim under the "opposition" clause requires only a "reasonable belief that the practice the employee is opposing violates Title VII."); *DeVoll v. Burdick Painting, Inc.*, 35 F.3d 408, 414 (9th Cir.1994) (ERISA allows award of attorneys fees where the plaintiff's claim was frivolous or made in bad faith), *cert. denied*, —— U.S. ——, 115 S.Ct. 1381, 131 L.Ed.2d 234 (1995); *Blue v. U.S. Dep't of Army*, 914 F.2d 525, 537 (4th Cir.1990) ("Sanctions should normally not be imposed for *filing* a frivolous Title VII claim where '[a]t the start of th[e] action' there was a reasonable belief that a prima facie case existed."), *cert. denied sub nom. Chambers v. U.S. Dep't of Army*, 499 U.S. 959, 111 S.Ct. 1580, 113 L.Ed.2d 645 (1991); *Arnold v. Burger King Corp.*, 719 F.2d 63 (4th Cir.1983) (Title VII plaintiff acting in good faith may still be assessed attorney's fees for groundless or frivolous litigation, but the motivating factor may shed light on the degree of frivolousness), *cert. denied*, 469 U.S. 826, 105 S.Ct. 108, 83 L.Ed.2d 51 (1984).

Even were some such heightening not already recognized, in this court's view it would be justified for the same reasons it is justified in "free speech" and defamation cases: The courts must not only tolerate, but must impose constitutional protection of the right of petition to an extent that necessarily encompasses some false claims in order to prevent an unconstitutional chill on complaints that matter. *Compare Hustler Magazine*, 485 U.S. at 52, 108 S.Ct. at 880 (there is no "strict liability" for false factual assertions by a publisher, because such a rule "would have an undoubted 'chilling' effect on speech relating to public figures that does have constitutional value"; therefore, " '[f]reedoms of expression require "breathing space," ' " quoting *Hepps*, 475 U.S. at 772, 106 S.Ct. at 1561, in turn quoting *Sullivan*, 376 U.S. at 272, 84 S.Ct. at 721); *Dun &*

*Bradstreet, Inc.*, 472 U.S. at 757, 105 S.Ct. at 2944 (1985) (even when private individuals and an issue of public concern are involved, the court considering a defamation claim must still "employ the approach approved in *Gertz* and balance the State's interest in compensating private individuals for injury to their reputation against the First Amendment interest in protecting this type of expression."); *Young*, 427 U.S. at 68 n. 26, 96 S.Ct. at 2451 n. 26 ("The mere fact that an alleged defamatory statement is false does not, of course, place it completely beyond the protection of the First Amendment. 'The First Amendment requires that we protect some falsehood in order to protect speech that matters,' " quoting *Gertz*, 418 U.S. at 341, 94 S.Ct. at 3007); *Gertz*, 418 U.S. at 339–41, 94 S.Ct. at 3006–08 ("Although the erroneous statement of fact is not worthy of constitutional protection, it is nevertheless inevitable in free debate"; thus, "[t]he First Amendment requires that we protect some falsehood in order to protect speech that matters."). Thus, the critical or "threshold" question, as the court sees it, is not whether false grievances are constitutionally protected, but whether the filing of grievances is protected.

■■ The court concludes that the filing of grievances by prisoners is undoubtedly constitutionally protected. As the court observed above, the First Amendment grants prisoners a limited right of access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494–95, 52 L.Ed.2d 72 (1987), and that right of meaningful access to the courts extends to established prison grievance procedures. *Bradley*, 64 F.3d at 1279; *Valandingham*, 866 F.2d at 1138. Thus, "[a] prisoner's right to meaningful access to the courts, along with the broader right to petition the government for redress of grievances under the First Amendment, precludes prison authorities from penalizing a prisoner for exercising those rights," *Bradley*, 64 F.3d at 1279, nor may the state burden this right with practices that are not reasonably related to legitimate penological objectives, nor act with the intent of chilling this First Amendment right. *Harris*, 65 F.3d at 916.

■ Furthermore, this court agrees with the Ninth Circuit Court of Appeals that the right in question is impinged when prison officials punish a prisoner for false statements in a grievance. *Bradley,* 64 F.3d at 1279. In *Bradley,* the Ninth Circuit Court of Appeals came to this conclusion, because "[f]rom the prisoner's point of view, the chilling effect is the same. Whether the content of the grievance or the act of filing the grievance is deemed to be the actus reus of the offense, the prisoner risks punishment for exercising the right to complain," and the court therefore concluded that application of prison "disrespect" rules to grievances impinged on the prisoner's right of petition. *Id.* Certainly, when the prisoner must fear any consequences beyond denial of his or her specific grievance, in this case, the imposition of punishment for the content of the grievance because the contents purportedly run afoul of prison rules unrelated to the grievance process, the prisoner's access to the grievance system is chilled. The Eighth Circuit Court of Appeals recognized this chilling effect in *Sprouse,* 870 F.2d at 452, and the court does not read *Orebaugh,* even to the extent that it otherwise limits *Sprouse,* as being to the contrary. *Orebaugh,* 910 F.2d at 528.

■ The question the court must resolve next is whether the punishment of false statements in grievances comports with the requirements of *Turner* for a constitutional impingement upon a prisoner's rights. *See Id.* (applying *Turner* analysis to this question, and finding enforcement of regulation was an "exaggerated response" not acceptable under *Turner*); *Curry,* 839 F.Supp. at 1441–42 (also applying *Turner* to the question, but finding application of the prison rule against false statements acceptable under *Turner*). The *Turner* analysis will uphold conduct of prison officials that impinges upon an inmate's constitutional rights if the conduct "is reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 89, 107 S.Ct. at 2261. Although this "reasonable relationship" test reflects the need to accord appropriate deference to prison officials, *see O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987), its "reasonableness standard is not toothless." *Abbott,* 490 U.S. at 414, 109 S.Ct. at 1892; *Goodwin v. Turner,* 908 F.2d 1395, 1403 (8th Cir.1990).

This court most recently discussed the *Turner* analysis in *Sisneros v. Nix,* 884 F.Supp. 1313, 1325–28 (S.D.Iowa 1995), and finds the principles there stated remain sound. *See Hosna v. Groose,* 80 F.3d 298, 304–05 (8th Cir.1996) (stating the same principles); *Hamilton v. Schriro,* 74 F.3d 1545, 1550–51 (8th Cir.1996) (same); *Pargo v. Elliott,* 49 F.3d 1355, 1356–57 (8th Cir.1995) (same). The *Turner* analysis requires the court to consider several factors "'that are relevant to, and that serve to channel, the reasonableness inquiry.'" *Sisneros,* 884 F.Supp. at 1327 (quoting *Abbott,* 490 U.S. at 414, 109 S.Ct. at 1882). These four factors are: (1) whether there is a rational connection between the restriction and the legitimate governmental interest used to justify it; (2) whether alternative avenues of exercising the right remain open to the inmate; (3) whether accommodation of the right will have an adverse impact on guards, other inmates and prison resources generally; and (4) whether obvious, easy alternatives to the restriction exist. *Id.* (citing, *inter alia, Turner,* 482 U.S. at 89–90, 107 S.Ct. at 2261–62).

The court does not believe that the legitimate governmental interest in prison peace and security can reasonably be questioned. *See, e.g., Fargo,* 49 F.3d at 1357 ("This court has recognized that internal security is foremost among the legitimate penological objectives contemplated in *Turner,*" citing *Timm v. Gunter,* 917 F.2d 1093, 1099 (8th Cir.1990), *cert. denied,* 501 U.S. 1209, 111 S.Ct. 2807, 115 L.Ed.2d 979 (1991)). Furthermore, unlike the Ninth Circuit Court of Appeals in *Bradley,* this court is not convinced that the link between the important prison interest in prison security and the "false statement" or "defamation" rules is "weak." *Bradley,* 64 F.3d at 1281. However, like the court in *Bradley,* and the Eighth Circuit Court of Appeals in *Loggins v. Delo,* 999 F.2d 364, 367 (8th Cir.1993), upon which *Bradley* relied, the court does not believe that any false or defamatory statement in *any* forum at *any* time would result in a total breakdown of prison security and discipline. *Bradley,* 64

F.3d at 1281. Rather, the grievance procedure itself provides for an appropriate process for preventing the total breakdown of prison security and discipline, because the truthfulness of the prisoner's allegations can be adjudged in a reasoned process after some investigation of the basis for those allegations. This reasonable resolution, however, is short-circuited by a response from prison officials that involves putting an inmate on report for making "false" statements in the prisoner's grievance. Cross-accusations heighten, rather than lessen, the risks to prison security, as the chilling of recourse to grievance procedures means the tensions the system addresses must be directed elsewhere less controlled or appropriate.

The court also concludes that there is no alternative for exercising the right of petition open to the prisoner if the grievance process is foreclosed. *See Sisneros,* 884 F.Supp. at 1327 (identifying this as the third *Turner* factor). Not every complaint cognizable in a grievance is also cognizable as a federal lawsuit pursuant to 42 U.S.C. § 1983, nor, if cognizable, is it susceptible of prompt and reasonable resolution through a lawsuit when such resolution might be available from a grievance system. Furthermore, the court finds that the prison's punishment of "false" or "defamatory" statements made in grievances is an "exaggerated response" to the problem. *Sisneros,* 884 F.Supp. at 1327 (the fourth factor in the *Turner* analysis requires examination of easy alternatives for the prison to pursue); *Turner,* 482 U.S. at 89–90, 107 S.Ct. at 2261–62. Two ready alternatives are apparent.[20] The first is simply denial of a grievance, because it is based on "false" or "defamatory" statements. This is, after all, the natural result of the filing of a groundless grievance. The second alternative is that embraced by the Eighth Circuit Court of Appeals, which is to restrict the number of grievances a prisoner with a record of filing groundless grievances may file. *Sterling,* 68 F.3d at 1126 (noting that the court has ac-

cepted such restrictions in the past, citing *In re Tyler,* 839 F.2d at 1290; *In re Green,* 598 F.2d 1126 (8th Cir.1979) (en banc)). Thus, the court concludes that imposing disciplinary sanctions merely for false or defamatory statements would violate a prisoner's constitutional right of petition under a *Turner* analysis.

■■■ However, the IMR rules in question allow for punishment in any situation, not just in the situation of statements in grievances, only where the "false" or "defamatory" statements are "knowingly" made. IMR Rules 35 & 41. Thus, the court is confronted with the question of whether this scienter requirement changes the *Turner* balance and provides sufficient protection of the right of petition when the statements being punished were made in grievances. The court acknowledges that the "knowingly" requirement significantly increases the prison's legitimate interests, because *knowingly* false and defamatory statements in grievances smack of "flouting the system and exploiting the First Amendment by directing written verbal abuse at and toward [prison officials]" through channels purportedly protected by the First Amendment. *Leonard,* 55 F.3d at 375 (jailhouse lawyer could not use purportedly legal mail to direct abuse at prison officials). Although this sort of misuse of the prison grievance system could be curtailed by one or both of the expedients the court has suggested above, particularly restriction of the number of grievances a prisoner with a history of making such frivolous and abusive grievances could file, the prison's response in imposing penalties for such knowing conduct is considerably less "exaggerated." *Turner,* 482 U.S. at 89–90, 107 S.Ct. at 2261–62.

Here, *Bradley* provides no guidance, because the "disrespect" rules in question there had no scienter requirement at all, *Bradley,* 64 F.3d at 1278, although the court limited its holding to statements involving "hostile, sexual, abusive, or threatening language;" while leaving open the question of whether

---

**20.** This court is also less sanguine than the Ninth Circuit Court of Appeals about the possibility of structuring a grievance system and regime that would make a prisoner's statements in a grievance or complaint "invisible" to all those involved in the daily operation of the prison, thus

alleviating the security concern. *Bradley,* 64 F.3d at 1281. Investigation of a prisoner's grievance that was founded on allegations about the conduct of a prison official cannot reasonably be conducted without some contact with the official in question.

"criminal threats" contained in grievances could be punished. *Id.* at 1281–82. The court is persuaded, however, that the "knowingly" requirement standing alone is not sufficient to warm the chill on rights of petition when the rules are applied to statements made in grievances.

First, the decision in *Wolfel* found that the inmate's right of petition was violated where the prison disciplinary authorities had failed to find both that his statements were false and that the statements were "maliciously" communicated. *Wolfel,* 707 F.2d at 934. Admittedly, these were elements of the prison regulation defining the offense of "unfounded complaints," not specifically of a constitutional requirement. *Wolfel,* 707 F.2d at 933. Nonetheless, *Wolfel* at least implicitly suggests that the constitutional requirements would have been met had the elements of the rule been proved. Second, returning once again to the degree of protection of "false" statements required to protect adequately fundamental "free speech" rights, such as the rights of political debate, the court finds that not only was a heightened scienter requirement imposed, but a heightened standard of proof. *See, e.g., Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 511 & n. 30, 104 S.Ct. 1949, 1965 & n. 30, 80 L.Ed.2d 502 (1984) (in order to protect constitutional rights, proof of falsity must be by clear and convincing evidence that the defendant realized that the statement was false or that he subjectively entertained serious doubt as to the truth of his statement); *Beverly Hills Foodland, Inc. v. United Food and Commercial Workers Union, Local 655,* 39 F.3d 191, 195 (8th Cir.1994) (state libel and slander actions may be maintained in the context of a labor dispute but only if the defamatory publication is shown by clear and convincing evidence to have been made with knowledge of falsity or reckless disregard of falsity, citing *Old Dominion Br. No. 496, Nat'l Ass'n Letter Carriers AFL–CIO v. Austin,* 418 U.S. 264, 281, 94 S.Ct. 2770, 2779–80, 41 L.Ed.2d 745 (1974)). This court holds that in order to avoid an unconstitutional "chill" on the right of petition, disciplinary sanctions for "false" or "defamatory" statements made in grievances may not be imposed unless some heightened burden of proof is also met. While proof by *clear and convincing evidence* that the statements were *knowingly* false or defamatory is appropriate in the defamation context, owing to the more limited extent of a prisoner's First Amendment rights, *Pell,* 417 U.S. at 822, 94 S.Ct. at 2804 (although lawful incarceration brings about limitations on privileges and rights, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."); *Hudson,* 468 U.S. at 523, 104 S.Ct. at 3198 (quoting *Pell*); *Leonard,* 55 F.3d at 374 (quoting *Pell* ), the court holds that proof *by the preponderance, or greater weight, of the evidence* that the statements were *knowingly* false or defamatory is required.[21]

 *iv. Genuine issues of material fact.* This holding, however, does not render summary judgment possible in this case, in light of numerous genuine issues of material fact. *Fed.R.Civ.P.* 56(c) (a genuine issue of material fact precludes summary judgment); *see also Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Reliance Ins. Co.,* 81 F.3d at 790; *Beyerbach,* 49 F.3d at 1325; *Munz,* 28 F.3d at 798; *Roth,* 25 F.3d at 708; *Cole,* 993 F.2d at 1331; *Woodsmith Publishing Co.,* 904 F.2d at 1247; *Wabun–Inini,* 900 F.2d at 1238. First, the present record presents a genuine issue of material fact as to whether the statements of the plaintiffs in their grievances found to be knowingly false or defamatory were so proved by the preponderance, or greater weight, of the evidence, although the record does demonstrate that some inquiry and adjudication of facts was made before the inmates were sanctioned under IMR Rules 35 and 41. This genuine issue of material fact precludes summary judgment in favor of plaintiffs. *See Fed. R.Civ.P.* 56(c); *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. However, the court's

---

**21.** Proof by the preponderance, or greater weight, of the evidence does represent a heightened standard in the prison context, because judicial review of disciplinary determinations generally require only "some evidence" of a rules violation to uphold disciplinary sanctions. *Earnest,* 64 F.3d at 367; *Henderson,* 29 F.3d at 469.

discussion just as plainly establishes that plaintiffs' claims of chilling of First Amendment rights of petition are neither "futile" nor "frivolous" and should be allowed to proceed. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Fuller,* 30 F.3d at 88; *Williams,* 21 F.3d at 225; *Costello, Porter, Hill, Heisterkamp & Bushnell,* 958 F.2d at 839; *Thompson–El,* 876 F.2d at 67; *Sanders,* 823 F.2d at 216; *Standard Title,* 349 F.2d at 622; *see also* 28 U.S.C. § 1915(d) (providing for dismissal of "frivolous" claims of *in forma pauperis* litigants). A triable issue remains as to the standard of proof employed in the disciplinary proceedings against the plaintiffs.

Next, because plaintiff Toby Welsh was allegedly disciplined for false statements in a "kite" to the warden rather than in a grievance filed in the prison grievance system, the court must fulfill its promise to consider whether such a "kite" is factually or legally similar to a grievance, such that "chilling" of the sending of such kites would constitute interference with an inmate's right to petition for redress of grievances. It is undisputed that the kite in question was a routine means of direct communication with the warden by inmates at the IMR. The court therefore concludes that, as a matter of law, interference or chilling of such kites would constitute chilling of the right to petition for redress of grievances. *See, e.g., Woods v. Smith,* 60 F.3d 1161, 1164 & n. 12 (5th Cir.1995) (an inmate disciplined in retaliation for sending letters to a judge and the warden had stated a constitutional claim, because "[t]he law of this circuit is clearly established, and was so in 1990 when the instant disciplinary charges issued, that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, *or for complaining to a supervisor about a guard's misconduct,*" citing *Gibbs v. King,* 779 F.2d 1040 (5th Cir.), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986); *Ruiz v. Estelle,* 679 F.2d 1115 (5th Cir.), *opinion amended in part and vacated in part,* 688 F.2d 266 (5th Cir.1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *Andrade v. Hauck,* 452 F.2d 1071 (5th Cir. 1971)), *cert. denied,* —— U.S. ——, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996); *Muhammad v.*

*Pitcher,* 35 F.3d 1081, 1085 (6th Cir.1994) (argument that inmate precluded from sending letters to the attorney general could still file lawsuits to exercise his right of access and to petition "misses the point entirely," because the inmate was chilled from a legitimate avenue for seeking redress of grievances). Although a kite to the warden is therefore legally and factually similar to a prisoner grievance, a genuine issue of material fact remains concerning whether Mr. Welsh was disciplined according to an improper standard of proof for making purportedly false statements in such a kite. Several genuine issues of material fact preclude summary relief for Mr. Welsh on claims based on other situations in which he claims to have been improperly disciplined, because the record does not contain documentation of these disciplinary proceedings, so that the court is unable to determine precisely what statements were made, or whether the discipline imposed was for "false statements" or "defamation" in violation of either IMR Rule 35 or IMR Rule 41.

The genuine issues of material fact precluding summary judgment on plaintiff Hancock's claims are the same as those above, if he was in fact ever disciplined for false or defamatory statements in grievances, but include, in the first instance, a question of whether Mr. Hancock ever was disciplined at all. Although the record reveals that defendant Luensman filed a disciplinary report against Mr. Hancock charging him, *inter alia,* with making "false accusations" about Officer Fairbanks and himself in violation of IMR Rules 35 and 41, the record does not reveal what, if any, consequences Mr. Hancock suffered as a result of that disciplinary report.

This lacuna in the record raises another legal question peculiar to Mr. Hancock's claims. That question is whether either the admitted statement by Officer Luensman that he would put Mr. Hancock "on report" for making false accusations or the filing of an unconsummated disciplinary report could nonetheless unconstitutionally "chill" an inmate's right to petition for redress. As a practical matter, the situations in which a "threat" of discipline is made or a disciplin-

ary report is actually filed, but not prosecuted, constitute the most effective, because least visible, kind of "chill." Such a threat might silence the inmate's effort to seek redress of grievances entirely and the filing of an unconsummated disciplinary report might prompt an inmate to withdraw his or her grievance. However, even under this court's holding, it would be proper to warn or advise an inmate that he or she could be disciplined if it were shown *by the preponderance, or greater weight, of the evidence* that the inmate made *knowingly* false or defamatory statements. Furthermore, an inmate receiving notice with the notice of a disciplinary report for making allegedly false or defamatory statements in a grievance that discipline could only be imposed if it were shown *by the preponderance, or greater weight, of the evidence* that the inmate had made *knowingly* false or defamatory statements would not have been subjected to an unconstitutional chill, because the inmate would have been advised of the protections provided for the inmate's right of petition. Although the court is reasonably sure that Mr. Hancock received no such notice, in light of the court's knowledge of prison procedures, the record does not establish this fact beyond dispute.

■ Thus, the court concludes that Mr. Hancock's claims of an unconstitutional chill on his right of petition as the result of threats of discipline or unconsummated disciplinary reports are viable, but that genuine issues of material fact preclude summary judgment in his favor on those claims. Nonetheless, just as the court held above that in order to avoid an unconstitutional "chill" on the right of petition, disciplinary sanctions for "false" or "defamatory" statements made in grievances may not be imposed unless it is shown by *the preponderance, or greater weight, of the evidence* that the statements were *knowingly* false or defamatory, it now holds that threats or warnings of the possibility of such discipline or the filing of an unconsummated disciplinary report nonetheless would constitute an unconstitutional chill on the right of petition if not accompanied by notice to the inmate that such discipline could not be imposed unless it were shown *the preponderance, or greater*

*weight, of the evidence* that the statements were *knowingly* false or defamatory.

■ In this respect, the court also finds instructive a recent unpublished decision of the district court for the Southern District of New York. *See Benitez v. Schlaggel,* 1995 WL 581716 (S.D.N.Y.1995). In *Benitez,* a prisoner was disciplined for making a false statement in an oral complaint to a prison officer that another officer had struck him, but the false statement charge was dismissed and the penalty for misconduct modified to eliminate the portion of the penalty imposed for false statements. *Id.* The court found that the prisoner had enjoyed sufficient scrutiny by prison officials to prevent a chilling of his First Amendment right of petition, because prison officials withdrew any punishment for "false statements." *Id.* The court agrees that in a case in which a disciplinary report for false statements in a grievance resulted in an acquittal of the inmate, the inmate's right of petition would not be chilled, because the prison officials had undertaken sufficient scrutiny of the disciplinary report to prevent the chill. Similarly, if the prison official who filed the disciplinary report thought better of it and withdrew it, or prison officials dismissed the disciplinary report to prevent a chill on the right of petition before trying the inmate for the disciplinary rules violation, there would be no chill. However, in a case in which the disciplinary report is simply not prosecuted, because it has already had the desired effect of causing an inmate to withdraw a grievance, the unconstitutional chill is still readily apparent. The record here simply does not tell the court which circumstance resulted in the lack of consummation of Officer Luensman's disciplinary report against Mr. Hancock, and this genuine issue of material fact also precludes summary judgment on Mr. Hancock's claims.

■ The implication of the *Benitez* decision that later reduction or expungement of discipline for false statements in grievances warms any unconstitutional chill on the right of petition, however, does not require dismissal of the claims of either Mr. Welsh or Mr. McGowan based on discipline later expunged by the Department of Corrections or

the courts, at least not on the present record. This is true, because in *Benitez*, the dismissal of the disciplinary report occurred before the inmate was subjected to any discipline, whereas in the cases of Mr. Welsh and Mr. McGowan, there is at least a genuine issue of material fact as to whether they actually suffered the disciplinary sentences before the discipline was expunged from their records and their good time credits were restored. The court concludes, however, that where an inmate is improperly disciplined for false or defamatory statements in a grievance and actually suffers disciplinary detention as the result of that disciplinary proceeding, even if the discipline is later expunged, the prisoner has undoubtedly experienced an unconstitutional chill on his or her right of petition not fully warmed by the subsequent remedial actions. In this case, there is a genuine issue of material fact as to whether plaintiffs Welsh and McGowan were subjected to improper discipline for false statements, based on the question of the burden of proof, as well as a question as to the extent to which the inmates actually suffered some part of the penalties imposed in those disciplinary proceedings before the discipline was expunged from their records and their good time credit reinstated.

### C. Qualified Immunity

■ The conclusion that plaintiffs have one viable claim, a claim of an unconstitutional chill on their right of petition, does not end the court's legal analysis, because defendants have also asserted their qualified immunity. The court recently discussed the standards for qualified immunity in *Bruns*, 913 F.Supp. at 1304–05, and will not repeat that discussion in its entirety here. Suffice it to say that qualified immunity is stripped away only if the official violated clearly established statutory or constitutional standards. *Bruns*, 913 F.Supp. at 1305. At the summary judgment stage of the proceedings, the test of qualified immunity is an objective one: The plaintiff must demonstrate that the law is clearly established and the defendant then bears the burden of showing that his conduct either does not violate plaintiff's rights or that there were extraordinary circumstances and that the defendant neither knew nor should have known of the relevant legal standard. *Id.* (citing *Johnson–El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989)). If the plaintiff can show that the defendant's conduct violated clearly established law, "then the defendant, as the movant for summary judgment, must demonstrate that no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and the information the defendant possessed at the time of his actions." *Cross v. City of Des Moines*, 965 F.2d 629, 632 (8th Cir.1992) (quoting *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir.1991)); *Johnson–El*, 878 F.2d at 1048 ("The defendant bears the burden of proof with respect to all other elements of the defense...."); *Bruns*, 913 F.Supp. at 1305.

■ Here, it is apparent that the juxtaposition of the *Sprouse* and *Orebaugh* cases, as well as the authority in decisions of the Eighth Circuit Court of Appeals for imposing sanctions for actual rules violations even when they appear to be retaliatory for exercise of constitutional rights, demonstrates the objective reasonableness of the defendant's conduct in pursuing prison disciplinary actions against the plaintiffs for false or defamatory statements made in prison grievances. Thus, defendants are entitled to the shield of qualified immunity in this case.

■ A conclusion that the defendants may raise the shield of qualified immunity in this case, however, does not end matters. Claims for declaratory and injunctive relief are not defeated by qualified immunity. *See, e.g., Wood v. Strickland*, 420 U.S. 308, 314–15 n. 6, 95 S.Ct. 992, 996 n. 6, 43 L.Ed.2d 214 (1975) (declaratory relief); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 445 (8th Cir.1995) (injunctive relief); *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir.1995) (injunctive relief); *Malik v. Brown*, 16 F.3d 330, 335 n. 4 (9th Cir.1994) (declaratory relief); *Mumford v. Zieba*, 4 F.3d 429, 435 (6th Cir.1993) (declaratory relief). Thus, despite the qualified immunity of the remaining defendants, there remain triable issues of fact concerning injunctive and declaratory relief.

### D. Declaratory And Injunctive Relief

In addition to claims for money damages precluded by the defendants' entitlement to qualified immunity in this case, the plaintiffs have asserted claims for equitable relief. They seek declaratory judgment in accordance with 28 U.S.C. § 2201, injunctive relief, and such other relief as the court finds appropriate. The court has previously noted the inconsistencies in the plaintiffs' statements of the claims upon which relief of any sort is sought. The court has construed the plaintiffs' complaint as attempting to state four different kinds of claims, and has found but one of those claims viable. Furthermore, the court finds that the request for "any other appropriate relief as determined by the court," Second Class Action Complaint, prayer subdivision (h), entitles the court to construe the claims for declaratory and injunctive relief consistent with its conclusions as to what claims are viable. Therefore, again perhaps construing a complaint drafted by counsel more generously than it deserves, the court concludes that declaratory and injunctive relief were sought on whatever claim the court found to be viable. Thus, the court construes the Second Class Action Complaint to seek declaratory judgment that the defendants' "practice and policy" of disciplining inmates for false or defamatory statements in grievances upon less than a preponderance, or greater weight of the evidence that the inmate knowingly made such statements, or threatening to file, or filing such disciplinary charges without providing the inmate with notice of the burden of proof to sustain the charge, violates the inmate's First Amendment right of petition. Furthermore, the court construes the Second Class Action Complaint to seek an injunction permanently enjoining the defendants from pursuing a "practice and policy" of disciplining inmates for false or defamatory statements in grievances upon less than the preponderance, or greater weight, of the evidence that the inmate knowingly made such statements, or threatening to file, or filing such disciplinary charges without providing the inmate with notice of the burden of proof to sustain the charge, in violation of the inmate's First Amendment right of petition.

As so construed, it is readily apparent that the same genuine issues of material fact that precluded summary judgment on a claim for damages on plaintiffs' only viable claim also preclude summary judgment on their claims for injunctive and declaratory relief: no such violations or threats of such violations have been shown undisputedly to have occurred. Furthermore, there is the additional genuine issue of material fact precluding declaratory or injunctive relief as to whether any "practice or policy" of the defendants as alleged even exists. Therefore, the court finds summary judgment on the plaintiffs' remaining claims for declaratory and injunctive relief cannot be entered. *Fed.R.Civ.P.* 56(c) (a genuine issue of material fact precludes summary judgment); *see also Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Reliance Ins. Co.*, 81 F.3d at 790, *Beyerbach*, 49 F.3d at 1325; *Munz*, 28 F.3d at 798; *Roth*, 25 F.3d at 708; *Cole*, 993 F.2d at 1331; *Woodsmith Publishing Co.*, 904 F.2d at 1247; *Wabun–Inini*, 900 F.2d at 1238.

### III. CONCLUSION

The court's conclusions in this ruling are many. Because of procedural defaults, the court was required to assess the "futility" or "frivolousness" of the claims of various of the purported plaintiffs as a prerequisite to the prosecution of any claims in this litigation by those plaintiffs. Furthermore, the court was presented with a renewed motion for class certification. The court has liberally construed the submissions of the parties in order to rectify the procedural shortcomings. It has also denied the renewed motion for class certification on essentially the same grounds it denied the previous motion.

However, the court was also concerned with plaintiffs' motion for summary judgment. The court's principal holding is that a practice or policy of prison officials of disciplining inmates for false or defamatory statements in grievances upon less than the preponderance, or greater weight, of the evidence that the inmate knowingly made such statements, or threatening to file, or filing such disciplinary charges without providing the inmate with notice of the burden of proof to sustain the charge, violates the inmate's

First Amendment right of petition. Such protections are not for the benefit of protecting some right to make false statements or to prosecute false claims, but for the purpose of preventing an unconstitutional chill on the right to petition for redress of grievances that matter, i.e., that are meritorious. The court finds all other claims asserted in the plaintiffs' Second Class Action Complaint, however, to be futile, and therefore frivolous, and as asserted by the "new" plaintiffs, such claims are dismissed.[22]

Notwithstanding its principal holding of what would constitute a viable claim of a constitutional violation here, the court cannot enter summary judgment in favor of plaintiffs in this case on the one viable claim they present. Genuine issues of material fact as to whether the plaintiffs were subjected to any "practice or policy," or were found guilty of disciplinary violations on less than the requisite proof, or were threatened with such discipline or were subjected to unconsummated disciplinary charges against them without the requisite notice, preclude summary judgment.

Furthermore, the court concludes that defendants are entitled to raise the shield of qualified immunity to claims for money damages in that, prior to this ruling, it was not clearly established that disciplining an inmate for an actual rules violation based on false or defamatory statements in grievances could run afoul of constitutional requirements. Because of this ruling, however, the availability of qualified immunity to similar claims for money damages in subsequent cases will be extraordinarily limited. Although the court finds qualified immunity to claims for money damages, the plaintiffs are entitled to pursue their claims for declaratory and injunctive relief as those claims have been construed by the court in this ruling.

Thus, the court's principal and many subsidiary conclusions are stated in the following list.

**IT IS ORDERED** that:

1. Plaintiffs' renewed motion for class certification is **denied.**

2. **Within thirty (30) days of the date of this order** plaintiff Avila or his counsel **shall file a status report** on Mr. Avila's intention to continue prosecution of his claims. Failure to file the required status report, or failure to do so in a timely manner will be deemed failure to prosecute this action and may be deemed willful disobedience of a court order, resulting in dismissal of Mr. Avila's claims for want of prosecution pursuant to *Fed.R.Civ.P.* 41(b).

3. Plaintiff Lunesford is dismissed as a plaintiff to this action without prejudice for failure to file either an application to proceed *in forma pauperis* or to pay a filing fee.

4. Leave to intervene pursuant to *Fed. R.Civ.P.* 23(b)(2) is **granted** as to plaintiffs/intervenors McGowan and Welsh. The applications to proceed *in forma pauperis* of these two plaintiffs are also **granted.**

5. Defendants Thalacker and Salviati are **dismissed** from this lawsuit, as all claims against them are futile.

6. Leave to amend the complaint pursuant to *Fed.R.Civ.P.* 15 is **granted in part and denied in part.** Leave is granted to add plaintiffs McGowan and Welsh and to add such of their claims as seek declaratory and injunctive relief for an allegedly unconstitutional chill on their right of petition as the result of discipline for false or defamatory statements in grievances, as such claims are explained herein. Leave to amend to state any other claims is denied on the ground of futility and frivolousness. The Second Class Action Complaint, submitted March 11, 1996, shall be filed as an amended complaint to the extent permitted by this ruling. Defendants have already answered the amended complaint and need file no further answer.

7. Plaintiffs' motion for summary judgment is **denied.**

8. Pursuant to 28 U.S.C. § 636(b)(1)(B), this case is **referred** to Chief United States Magistrate Judge John A. Jarvey for further

---

22. Because plaintiff Hancock's claims, other than his right of petition claims similar to the kind found viable here, are similarly futile, the court anticipates that Mr. Hancock will voluntarily withdraw such claims or that defendants will swiftly file their own motion for summary judgment on such claims.

proceedings, including further review of the record and the pleadings, an evidentiary hearing, if necessary, hearing any oral arguments, and submission of a Report and Recommendation to the undersigned United States District Court judge regarding disposition of the case.

IT IS SO ORDERED.